[Filed November 11, 1886.]

## W. B. WALKER *v.* L. GOLDSMITH ET AL.

APPOINTMENT OF GUARDIAN—SALE BY—COLLATERAL ATTACK.—Under Sec. 20, Chap. 52, Misc. Laws, which provides that "in case of any action relating to real estate sold by a guardian under the provisions of this chapter, in which the ward or any person claiming under him shall contest the provisions of such sale, the same shall not be avoided on account of any irregularity in the proceedings, provided it shall appear that the guardian was licensed to make the sale by a court of competent jurisdiction," etc., the appointment of the guardian cannot be attacked collaterally.

LIS PENDENS—ANTECEDENT EQUITY—CONTRACT FOR SALE OF REAL ESTATE.— On the second day of January, 1877, Teal, who was then the owner, for a valuable consideration agreed to convey to Solomon Goldsmith the land in controversy, and in pursuance thereof, on the 6th day of May, 1880, con-

Points decided.

veyed the premises accordingly. On the fifth of May, 1880, said Teal filed his complaint in the Circuit Court of Multnomah County, against the predecessors of Goldsmith's adversaries in this suit, to quiet his title to the premises in dispute, and issued a summons which was served on Chapman, one of the parties, the same day. On the 15th of May, 1880, Chapman appeared for himself and other defendants, and on July, 1880, all the defendants answered. Afterwards, Louis Goldsmith, the defendant herein, purchased Solomon's interest in the aforesaid lands. *Held :* 1. That there being no statute in this state declaring the effect of a decree upon the title of a *lis pendens* purchaser, the common law rule will prevail. 2. That since Goldsmith had an equitable title in the lands in controversy antecedent to the filing of the complaint by Teal, who was but a naked trustee of the legal title, the doctrine of *lis pendens* was inapplicable, notwithstanding Teal's deed to him bore a later date.

SUIT—WHEN COMMENCED—LIS PENDENS—WHEN NOTICE OF BEGINS.—Whether a suit is to be deemed commenced when the complaint is filed, or only when the summons is served, for the purpose of *lis pendens*, or whether the doctrine applies to a conveyance made after suit commenced and before the filing of the answer, where the decree is in favor of the defendant upon new matter in the answer, not decided.

PARTITION—APPEAL FROM DECREE OF.—A decree in a partition suit which ascertains and determines the rights of the parties, and leaves nothing for the court to do but to carry the decree into effect by the appointment of referees, etc., is a final decree, and is appealable.

GUARDIAN'S SALE—JURISDICTION.—Where the question as to a guardian's sale of lands of his ward arises collaterally, and the pleadings do not attack the proceedings for want of jurisdiction, and where the record on its face discloses jurisdiction, both of the parties and the subject matter, the sale must be sustained. All other questions are mere matters of irregularity, and do not affect the validity of the sale.

SAME—PETITION.—A petition by a guardian for the sale of the lands of his ward, which states a valid ground for such sale, but joins with it another ground which is insufficient, will not thereby be rendered insufficient to give the court jurisdiction to order the sale.

NOTICE OF SALE—PROOF OF POSTING.—Where the proof of posting notices of a guardian's sale of lands is sufficient in form, but the jurat bears a date prior to that on which the notices were posted, as shown by the affidavit, but the return of sale by the guardian recites such a posting and publication as the law requires, the misdate in the jurat will be deemed a clerical error, and this court will intend that the affidavit was made on some day after the notices were posted.

SAME—TIME OF PUBLICATION.—It is not necessary that the publication should be during the four weeks next preceding the sale. It is sufficient that notice was published for four weeks, successively, prior to the sale.

SAME—FRAUD—VOIDABLE SALE.—The question of fraud in the proceedings of a guardian in conducting a sale of land, can be raised only upon appropriate allegations thereof in the pleadings. A fraudulent sale is not void, but voidable at the election of the party injured. And acquiescence for an unreasonable time after notice of the fraud, and after the minor had reached his majority, would be deemed a waiver of his right to proceed.

UNRECORDED DEED—NOTICE—DECREE.—One holding an unrecorded deed to lands will not be bound by a decree quieting the title thereof against his grantor, holding the record title, in a suit begun subsequent to the date of such unrecorded deed, especially when such deed was placed on record before such decree was rendered, and the adverse party had full notice thereof.

EVIDENCE.—Where, in a subsequent suit, the plaintiff relies upon such decree as one of the muniments of his title, he should offer it in chief, that the defendant may have a fair opportunity to meet it.

PARTITION SUIT—PLEADING.—When questions of fact are to be tried in partition suits, it can only be done on regular issues joined. The allegations and proofs must agree in this class of suits, the same as in others.

FORMER ADJUDICATION—PER THAYER, J., CONCURRING.—The equitable estate owned by Goldsmith prior to the commencement of the suit by Teal, brings this case within the rule of the statute (Civil Code, § 723, subd. 2) that the effect of a judgment, decree, or final order in an action, suit, or proceeding before a court, or judge thereof, of this State ⁂ ⁂ having jurisdiction to pronounce the same ⁂ ⁂ is in respect to the matter directly determined, conclusive between the parties and their representatives and successors in interest, by title subsequent to the commencement of the action, suit, or proceeding, litigating for the same thing, under the same title, and in the same capacity.

LORD, C. J., dissenting.

MULTNOMAH COUNTY.   Defendants Goldsmith appeal.   Reversed, and decree as prayed for in Appellants' answer.

*P. L. Willis,* and *Seneca Smith,* for Respondents.

The appellants are concluded in this case by the decree of the court in the case of *Teal* v. *Dickinson* (Civil Code, §§ 50, 723, 385).   The purchaser of property involved in litigation is a privy, and need not be made a party in order to bind him by the result of the suit.   (*Wells, Res Adjudicata,* § 26; *Snowmen* v. *Henford,* 57 Me. 400; Story Eq. Jur., § 351; Cooley Const. Lim., *408; *Murray* v. *Lilburn,* 2 Johns. Ch. 445; *Cook* v. *Manciers,* 5 Johns. Ch. 96; *Sedgwick* v. *Cleveland,* 7 Paige, 261; *Lovejoy* v. *Murray,* 3 Wall. 19.)   Where a suit is brought in the name of one for the benefit of another, who directs and advises the proceeding, the latter is concluded, though not a party.   (*Rapalje* v. *Prince,* 4 Hill, 122; *Conger* v. *Chilcote,* 42 Iowa, 24; *Castle* v. *Noyes,* 14 N. Y. 335; *Landes* v. *Hamilton,* 77 Mo. 555.)   The evidence is conclusive and undisputed, that the Teal–Dickinson suit was begun and carried on by Goldsmith's agent for his benefit, and Teal's at-

---

torneys were Goldsmith's attorneys therein.    One who takes a conveyance *lis pendens* is bound, notwithstanding he had a prior equity, unless the adverse parties had notice of such equity.    All the cases sustaining a title based upon a prior equity in opposition to *lis pendens* proceed upon the fact that there was notice.    (*Parks* v. *Jackson*, 11 Wend. 442; *Clarkson* v. *Morgan*, 6 B. Mon. 441; *Gibler* v. *Trimble*, 14 Ohio, 323.)    Even the holder of an unrecorded deed is so bound. (*Utley* v. *Fee*, [Kan.] 7 Pac. Rep. 555; *Clark* v. *Connor*, 28 Iowa, 311; *Norton* v. *Berge*, 35 Conn. 263.)    The objection that the Teal–Dickinson decree was not admissible in evidence because not pleaded, was not made below, and is not therefore available now.    (*Carpenter* v. *Dexter*, 8 Wall. 524; *Rodgers* v. *Wells*, 44 Mich. 412; *Levin* v. *Russell*, 42 N. Y. 255; *Quinby* v. *Strauss*, 90 N. Y. 664.)

*James K. Kelly*, and *George H. Williams*, for Appellants.

The appellants are not bound by the decree in *Teal* v. *Dickinson*.    The doctrine of *lis pendens* does not apply to a purchaser until the service of original process.    (*Majors* v. *Powell*, 51 Cal. 482; *Butler* v. *Tomlinson*, 38 Bar. 641; *Burroughs* v. *Reiger*, 12 How. Pr. 171; *Hayden* v. *Bucklin*, 9 Paige, 512; *Webb* v. *Pell*, 1 Paige Ch. 564.)

If a person buys and pays for real property in good faith, and a suit is commenced by or against his vendor involving the title before deed is made, the buyer, in pursuance of his purchase, may take a deed after suit brought without being bound by its result, unless he is made a party.    (*Jackson* v. *Dickinson*, 15 Johns. 309; *Gibler* v. *Trimble*, 14 Ohio, 323; *Hopkins* v. *McLaren*, 4 Cow. 678; *Clarkson* v. *Morgan's Devisees*, 6 B. Monroe, 447, and cases cited; Wade, Notice, § 160.)    Sec. 722, Civil Code, on which respondents rely, is simply declaratory of the common law.    " Title subsequent to the commencement of the action," means, of course, in equity, what courts of equity hold to be title.    If Solomon Goldsmith bought and paid for the property before Teal commenced his

suit, then the title, in the eye of equity, was in Goldsmith. (Story's Eq. Jur., § 790; Pomeroy Eq. Jur., § 368.)

STRAHAN, J.—The plaintiff brings this suit to obtain partition of the east half of the Danforth-Balch Donation Land Claim, situate in Multnomah county, Oregon. He alleges that he is the owner of 11,335-100,000 of said claim; that Louis Goldsmith is the owner of one-fourth; that Max Goldsmith is the owner of one-fourth; that L. W. Gilliland is the owner of 17,067-100,000; that Seneca Smith is the owner of 9,583-100,000, and that Anna Hamilton and Emma Dickinson each own one-twentieth.

The defendants Louis Goldsmith and Max Goldsmith answered together, denying the material allegations of the complaint, except that Max Goldsmith is the owner of one-fourth of the real property described, and Louis Goldsmith is the owner of five-eighths thereof. Their answer then alleges that the defendant Max Goldsmith is the owner in fee of an undivided one-fourth of said real property, and that the defendant Louis Goldsmith is the owner in fee of the undivided five-eighths of said real property described in the complaint, and that defendants L. W. Gilliland, Seneca Smith, Emma Dickinson, Anna Hamilton, and P. L. Willis are the owners in fee of the undivided one-eighth of said premises; and that they have not together, nor has either of them, any other right, title to or interest in said real estate; but these defendants have no knowledge or information sufficient to form a belief as to the rights of the said Gilliland, Smith, Dickinson, Hamilton and Willis, as between themselves.

The plaintiff's reply denies that Willis owns any part of said real property, or that he has any interest therein. It also puts in issue the residue of the new matter contained in the answer. The defendants, Dickinson, Smith and Hamilton answered, admitting their interests as alleged. Upon these issues the case was tried in the court below, where a decree for the partition of said real property was entered, substantially in accordance

with the prayer of the plaintiff's complaint. By said decree the court finds that the land to be partitioned contained 172 and 96-100 acres, and that the several parties (plaintiffs and defendants) owned the same as tenants in common, in the proportions alleged in the complaint.

From this statement of the proceedings it will readily be perceived that the only real contention is between the defendant Louis Goldsmith and his co-defendants Gilliland, Smith, Dickinson and Hamilton, and the plaintiff, as to the ownership of the undivided three-eighths in issue between them. The pleadings admit that he owns two-eighths or one quarter, but they deny that he owns the other three-eighths which he claims, and that is the only controverted question we are called upon to determine. It is conceded by all, that on the 4th day of October, 1870, one-half of the land, including the three-eighths in controversy, belonged either to J. H. Mitchell or to John Danforth, Louis and Emma Balch, children of Danforth Balch, then deceased, and of Mary Jane Balch, who died in 1875 ; and that unless it then belonged to Mr. Mitchell it does not now belong to Louis Goldsmith ; and that Mr. Mitchell then owned a life estate in said land for the life of said Mary Jane Balch, with a right to the possession of the whole during the continuance of said life estate ; that on the 4th day of October, 1870, Mitchell conveyed to B. Goldsmith, for the consideration of $15,000, all his right, title and interest of, in and to the said premises, and that on the 26th day of October, 1870, said B. Goldsmith sold to P. Wasserman all his right, title and interest in said real property for $10,000, except the said life estate, which last estate terminated with the death of Mary Jane Balch in 1875. On the 12th day of July, 1871, for the consideration of $1,000, Wasserman sold and conveyed all his right, title and interest in said real property to Joseph Teal.

The interest that is claimed, which passed by these mesne conveyances to Teal, was the same interest that was sold by C. S. Silvers, as guardian of Danforth Balch, Emma Balch, John Balch and Louis Balch, on the 24th day of September, 1870, to John H. Mitchell. If the county court of Multno-

mah County had jurisdiction to order the sale of the interest of said heirs, then, for all the purposes of this case, Mitchell acquired their interest. The interest which the defendants Gilliland, Smith, Dickinson, Hamilton, and the plaintiff Walker represent in this case, is whatever interest they have acquired through mesne conveyances from the four children of Danford Balch, above named, or such as the defendant Emma Dickinson had in her own right; and their present interest depends on the validity of the guardian's sale above referred to, and the effect to be given to the decree of this court in the case of *Joseph Teal*, plaintiff, v. *Frank Dickinson, and Emma Dickinson, his Wife, James C. Chapman, Danforth Balch, John Balch and Louis Balch*, defendants, and in the case of the same plaintiffs against the same defendants, which cases appear to have been consolidated, and one decree rendered, disposing of both cases in the same manner. If the guardian's sale above referred to is a nullity, or if the decree in the causes last named was binding upon Solomon Goldsmith, or affected his interest, then the plaintiff and these defendants, whose title depends on the same questions, are entitled to have partition of said premises, as prayed: otherwise, the defendant Louis Goldsmith is entitled to five-eighths of said real property, and must have partition thereof, as prayed by him and Max Goldsmith in their separate answer.

And first, as to the guardian's sale : The entire record of the county court of Multnomah County in the matter has been offered in evidence in this cause, and we have carefully examined it. No substantial defect or irregularity was pointed out to us upon the argument, and we have discovered none. The county court, at the time it made the order of sale in question, appears from the record to have acquired jurisdiction of the subject matter and of the persons to be affected by its orders and decrees; the sale regularly made, reported to the court, and on the 3d day of October, 1870, duly confirmed by said court, and the guardian was directed to execute and deliver a deed to J. H. Mitchell, the purchaser, for the property purchased by him.

Upon the argument, two points of objection were suggested against the validity of the sale. The first was, that at the time C. S. Silvers was appointed guardian of said minors, they were not residents or inhabitants of Multnomah County; and the other objection is, that J. H. Mitchell was not authorized to purchase, because he was one of the attorneys for the guardian, and that there was some kind of fraud practiced between the attorney and the guardian. But if it were competent to raise these questions between the parties now before the court, it has not been done. The pleadings in this suit are silent on both points. They contain no allegations of fraud, or other allegations tending to impeach the jurisdiction of the county court of Multnomah County in decreeing said sale.

But if this sale can be attacked, it must be on some one or all of the grounds specified in the statute. The section on the subject is as follows :

" SEC. 20. In the case of an action relating to any estate sold by a guardian under the provisions of this chapter, in which the ward or any person claiming under him shall contest the validity of the sale, the same shall not be avoided on account of any irregularity in the proceedings, provided it shall appear :

" 1. That the guardian was licensed to make the sale by a court of competent jurisdiction.

" 2. That he gave a bond that was approved by the county judge.

" 3. That he took the oath prescribed by this chapter.

" 4. That he gave notice of the time and place of sale as prescribed by law ; and

" 5. That the premises were sold accordingly, at public auction, and are held by one who purchased them in good faith." (General Laws, 740, Sec. 20.)

In a case arising under a similar statute in the State of Minnesota, the appointment of a guardian was not allowed to be attacked collaterally. (*Davis* v. *Hudson*, 29 Minn. 27.) We, therefore, hold that this record is sufficient, and that by virtue of said guardian's sale and the mesne conveyances offered

in evidence on the part of the defendant Louis Goldsmith,
Joseph Teal acquired four-eighths of the east half of the Dan-
forth Balch Donation Land Claim mentioned in the pleadings.
The effect of the decree of this court against Teal, above re-
ferred to, upon the interest of the defendant Louis Goldsmith,
remains to be considered.

On the 5th day of May, 1880, Joseph Teal filed his com-
plaint in the circuit court of Multnomah County, Oregon,
against Frank Dickinson and Emma Dickinson, his wife, for-
merly Emma Balch, James G. Chapman, Danforth Balch and
Louis Balch, to quiet his title to a half interest in said east
half of said donation land claim, which half interest included
the three-eighths now in controversy. On the 6th day of May,
1880, the summons in said suit was regularly served on the
defendant Chapman. On May 15, 1886, a stipulation was
signed by the attorney, whereby it was agreed that John Balch,
Louis Balch and James G. Chapman should have until the
second Monday of the next term of court thereafter in which
to plead, and the said James G. Chapman then entered his
appearance for himself and as attorney for the defendants John
and Louis Balch.

On the 15th day of July, 1880, said defendants filed their
answer. On the 2d day of January, 1877, or 1878, Joseph
Teal and Solomon Goldsmith, of San Francisco, entered into
an agreement in writing, whereby in consideration of $1, the
receipt of which was thereby acknowledged, and for divers
other valuable considerations, the said Joseph Teal agreed for
himself, his heirs, executors and administrators, to make, ex-
ecute and deliver to said Solomon Goldsmith, his heirs, exec-
utors, administrators and assigns, quit claim deeds to and for
all the real property described in said writing, including the
four-eighths of the Balch claim, heretofore mentioned. By the
said writing the said Teal also obligated himself to con-
vey to said Oliver Goldsmith a large amount of personal
property, situate in this state ; said conveyances to be executed
by said Teal as soon as money enough was realized out of said
real and personal property to pay off the full amounts of cer-

tain claims specified in said writing, due by Teal. It also appears that on the 6th day of April, 1880, Solomon Goldsmith commenced a suit in the circuit court of the United States for the district of Oregon, founded on the said agreement; and that on the same day a restraining order was allowed against the defendant Teal, and he was also required, within ten days after the service of the said order, to show cause why a receiver should not be appointed, as prayed in said bill of complaint. It also appears that said suit was for an accounting, and for conveyance. It also appears that on the 16th day of April, 1880, the plaintiff in said suit applied to said court for leave to withdraw the same without prejudice, for the purpose of amicably settling the controversy; and said motion was allowed, and the bill of complaint was by leave of the court withdrawn from the files. It also appears that on the 6th day of May, 1880, Joseph Teal and wife conveyed by deed all their right, title and interest to Solomon Goldsmith, of, in and to the undivided three-fourths of the said east half of said donation claim.

The deposition of Solomon Goldsmith was taken in this suit, in which he testified, in answer to interrogatories, substantially as follows : " I purchased an interest in the Danforth Balch Donation Land Claim in 1877 or 1878. I bought an undivided half of an undivided three-fourths of the east half of the donation land claim of Danforth Balch, from Joseph Teal and Bernard Goldsmith, in 1877 or 1878. I paid $40,000. I had indorsed notes to the amount of $40,000 for Joseph Teal and Bernard Goldsmith. I paid these notes at maturity. Then Joseph Teal gave me a written contract, that upon the surrender of these notes he would give a deed of said property. I tendered him the notes through my agent, Bernard Goldsmith, but he refused to execute a deed. I then commenced a suit in the United States district court of Oregon, in 1880, when he executed the deed." Also further : " I had a written contract with Joseph Teal, which was surrendered to him at the time of making the deed. I have no copy, and don't know whether my agent, Bernard Goldsmith, has or not. It also appears from his evidence that the $40,000 was paid for said interest two or

three years before the deed was executed, and that at the time of said payment he had no knowledge or notice of any kind that the Balchs claimed any interest in said real property, and that he never heard of said claim until after Joseph Teal commenced his suit. It also appears that Louis Goldsmith purchased this interest of Solomon Goldsmith for $40,000; and on all of these points, Solomon Goldsmith is corroborated by Louis Goldsmith, whose deposition was also taken.

We are now prepared to consider the effect of the decree of this court upon Goldsmith's interest, rendered in the case of *Teal* v. *Dickinson et al.* It is claimed by the respondents that Goldsmith was a *lis pendens* purchaser, and was, therefore, bound by the decree rendered against Teal, from whom he received his deed. There is no statute in this state declaring the effect of a decree upon the title or interest of a *lis pendens* purchaser, and, therefore, the common law rule will prevail. Chancellor Kent in *Murray* v. *Ballou,* 1 Johns Ch., 576, states the rule thus : " The established rule is, that a *lis pendens,* duly prosecuted, and not collusive, is notice to a purchaser, so as to affect and bind his interest by the decree, and the *lis pendens* begins from the service of the subpœna after the bill is filed." And a late writer states the doctrine thus : " During the pendency of an equitable suit, neither party to the litigation can alienate the property in dispute, so as to affect the rights of his opponent. This brief proposition in reality contains the entire doctrine." (2 Pomeroy's Eq. Juris., Sec. 633.) If the title derived from Teal by Solomon Goldsmith is within this rule, then he and all who have succeeded to his interest would be bound by the decree rendered in that suit; otherwise he was a stranger to the proceeding and his interest remained unaffected by the decree.

The rule and the exception are thus stated in *Hopkins* v. *McLaren,* 4 Cowen, 678, 679:

" The doctrine of *lis pendens* applies *only* when a *third person* attempts to intrude into a controversy by acquiring an interest in the matter in litigation pending the suit. The rule as given by Chancellor Kent, in the case of *Murray* v. *Lyburn,*

2 Johns Ch. 445, is that any interest acquired in the subject matter of a suit, pending the suit, is so far considered as a nullity that it cannot avail against the plaintiff's title. The reason of the rule is, that if a transfer of interest, pending a suit, were to be allowed to affect the proceedings, there would be no end to litigation; for as soon as a new party was brought in, he might transfer to another, and render it necessary to bring that other before the court, so that a suit might be interminable. So that neither the rule nor the reason of the rule applies to the case under consideration. The interest of the appellant in the mortgage was not a voluntary acquisition by him pending the suit. *His interest subsisted long before the suit was commenced,* and ought not in my opinion to have been considered as a nullity." And so in *Parks* v. *Jackson,* 11 Wend. 442, Senator Seward, who delivered the prevailing opinion in the court for the correction of errors, said: " This objection needs no other answer than that in order to take this case out of the rule of *lis pendens,* it is only necessary that the persons sought to be affected by the decree should have a subsisting interest in the premises, and might have been made parties to the suit."

So also in *Trimble* v. *Boothby,* 14 Ohio, 109, it is said: " If the interest in these lands, acquired by purchase from Kerr, was to be affected by the suit of Moore's devisees, such interest existing prior to the commencement of the suit, the persons so interested should have been made parties. Not having been made parties, it was their right to clothe their equity with the legal title, as though such suit had not existed." The like rule is stated in *Clarkson* v. *Morgan's Devisee,* 6 B. Monroe, 441. Said the Court: " But if the contract was executory, it could not be overreached or concluded by a subsequent suit against Parker, without giving to those who claimed under it a right to be heard. Nor could the rights of Fowler, or those claiming under him, be concluded, though the contract had been in parol, the same being consummated by a subsequent deed; as was determined by this court in the case or *Clary's Heirs* v. *Marshall,* 5 B. Monroe, 266. If a right or interest passed

from Parker to Fowler by contract, which was obligatory upon the parties, that right or interest cannot be overreached or concluded by a subsequent suit against Parker." In *Haughwont* v. *Murphy*, 22 N. J. Eq. 531, it is said: " A person whose interest existed before the commencement of the suit is a necessary party, and will not be bound by the proceedings, unless he be made a party to the suit." (*Ensworth* v. *Lambert*, 4 Johns Ch. 605.) And the same doctrine is stated in *Rodgers* v. *Dibrell*, 6 Lea. 69. This doctrine may be regarded as elementary. Speaking of the doctrine of *lis pendens*, it is stated by an eminent American author that, " This reason, however, has no application to a third person whose interest existed before the suit was commenced, and who might have been made an original party." (Bigelow on Frauds, 301.) And so in Adams' Eq. 336, note 1, it is said: " * * * And it applies only to rights or interests acquired from a party after the institution of the suit, and not to the case of a right previously contingent or conditional becoming perfect. This view of the application of the doctrine under consideration is further strengthened by considering the relations that existed between the vendor and vendee of real property." * * * Where a contract is made for the sale of land, the vendor is in equity immediately deemed a trustee for the vendee of the real estate, and the vendee is deemed a trustee for the vendor of the purchase money. Under such circumstances the vendee is treated as the owner of the land, and it is devisable and descendible as his real estate. On the other hand, the money is treated as the personal estate of the vendor, and is subject to the like mode of disposition by him." (2 Story's Eq. Juris., Sec. 1212.)

" The view which equity takes of the juridical relations resulting from the transaction is widely different. Applying one of its fruitful principles, that that which ought to be done is regarded as done, equity says that from the contract, even while yet executory, the vendee acquires a real right, a right of property in the land, which, though lacking a title, and therefore equitable only, is none the less the real beneficial

ownership, subject, however, to a lien of the vendor, as security for the purchase price, as long as that remains unpaid. This property in the land, upon the death of the vendee, descends to his heirs, or passes to his devisees, and is liable to the dower of his widow." (1 Pomeroy's Eq. Juris., Sec. 105.)

The facts in this case show that at the time Teal commenced the suit in question he had no beneficial interest whatever in the property in question, and that he was nothing but the naked trustee of the legal title, and that he held said title for the benefit of Solomon Goldsmith. To allow the equitable doctrine of *lis pendens* to prevail so as to defeat such a right, would, to our minds, be subversive of some of the most important principles of equity. It was insisted at the trial of this cause that the decree against Teal must be allowed to have the effect of a recorded deed, for the purpose of cutting off and defeating the rights of Goldsmith under his contract with Teal. But to have this effect it must be imparted to it by some statute, and it is not claimed that there is any statute in force in this state giving to a decree any such force or effect.

In *Smith* v. *Williams*, 44 Mich. 240, the Court apparently had this question under consideration. Its language is : " The only reason given for the position is, that the plaintiff, by not recording her deed, and suffering Byron F. Squires to appear of record as apparent owner, has allowed him to appear to the world as the owner of the land now sought to be recovered by her, so that Squires' day in court was her day, and she must accept the consequences of her own acts. It is, then, upon her failure to place the evidence of her title upon the record, that this effect of the decree upon her rights depends. The general rule that a judgment or decree binds those only who are parties to it, is not disputed. There are a few well understood exceptions of persons, who, subsequent to the institution of the suit, have acquired interests or claims under the parties ; but the plaintiff's is not one of these, for her title had accrued before. If she loses her title, then, it must be by force of the recording laws, for, independent of these, there is no principle of law that could bind her by the judgment against one whose inter-

est she had acquired long before the suit was instituted." And further on in the same case the court remarks : " The mere institution of a suit cannot make one a *bona fide* purchaser." It was claimed upon the argument by counsel for the respondent, that a suit is commenced by the filing of the complaint, and that the *lis pendens* attaches from that time; while counsel for appellants insist that the suit is to be deemed commenced for the purposes of *lis pendens* from the time of the service of the summons. We do not find it necessary to decide which view is correct. The *lis pendens*, whether it is to be regarded as attaching from the filing of the complaint or the service of the summons, did not in any way affect the estate of Solomon Goldsmith. And for like reasons we do not now decide the effect of the pendency of a suit upon a conveyance made by a plaintiff after the commencement of the suit, when the final decree is in favor of a defendant, upon new matter in his answer, and which answer was not filed until after such conveyance. Upon the latter subject Mr. Pomeroy says : " I would remark in passing, that while the general doctrine of notice of *lis pendens* and the foregoing special rules have ordinarily been applied to real property described by the plaintiff in his bill of complaint, they should upon principle apply with equal force to the counter claim and cross complaints authorized by the reformed procedure, by which the defendant alleges some equitable interest or right, and demands some affirmative relief. In such pleadings the defendant becomes the actor, and is to all intents and purposes a plaintiff." (2 Pomeroy's Eq. Juris., Sec. 634.) Under this state of pleadings it is difficult for us to see why a *lis pendens* attaches or becomes operative as notice, until the answer is filed setting up such equitable claim.

Counsel for the respondent have on file in this cause certified copies of numerous depositions heretofore taken in the case of *Teal* v. *Dickinson et al.*, and have offered the same as evidence upon this trial. We have already held that there are no issues in this cause, upon the trial of which any of the said evidence would be material; but they are incompetent as

between the parties to this suit. Section 819 of the civil code, it is claimed, authorizes the introduction of these depositions. That section is as follows : " When a deposition has been once taken, when either of the causes mentioned in section 804 exists, or if the witness be dead, or his attendance cannot be procured, it may be read in any stage of the same action, suit or proceeding between the same parties or their representatives, upon the same subject, and is then to be deemed the evidence of the party reading it."

It is clear from an inspection of the depositions that they are not offered in an action, suit or proceeding between the same parties or their representatives, upon the same subject. The parties are different, and the two causes of suit are entirely dissimilar.

It is also claimed now for the first time that the decree appealed from is not final; but we think it is *final* in the sense that it ascertains and determines the rights of the parties to the suit in the land in controversy, and leaves nothing more for the court to do but to carry the decree into effect by the appointment of referees, etc.

It must be remembered, that in this case the plaintiff is seeking to make a collateral attack upon a judicial record of a court created by the constitution, which is a " court of record having general jurisdiction, to be defined, limited and regulated by law, in accordance with this constitution." (Const. of Oregon, article 8, Sec. 1.) Without entering into any general discussion of the law of this State relative to the power of county courts to order the sale of real estate of minors, it is sufficient to say, where the question arises collaterally, and where the pleadings do not attack the proceedings for want of jurisdiction, and where the record on its face discloses jurisdiction both of the parties and the subject matter, the sale must be sustained. All other questions are mere matters of regularity, and in such case do not affect the legality of the sale. In addition to these considerations, the property appears to have passed through several purchasers, who, it is shown, in each instance paid large sums of money for it, presumably

upon the faith of this judicial record.   To overthrow the sale now in the way it is sought to be accomplished in this case, would look very much like a species of judicial robbery.   No court of equity could do an act fraught with such flagrant injustice.

*Hatcher* v. *Briggs*, 6 Or. 31, is a case where this court applied equitable principles to a void judicial sale.   There the county court of Linn County had ordered the sale of certain real property for the purpose of partition, after all jurisdiction had been taken from the county courts in such matters, and vested in the circuit courts.   It was a case plainly without jurisdiction, and the sale was admitted to be void.   But Hatcher had invested his money on the faith of that judicial record, and had made permanent improvements on the land.   This court therefore refused to permit the legal owner of the land to recover the same, until an account had been taken of Hatcher's purchase money and the value of the improvements made, and also of the rents and profits, and enjoined the legal owner until Hatcher was reimbursed.   This case arose between the parties to the original transaction, and not between parties who came in subsequently, and invested their money on the faith of what had been done.   Hatcher made himself a party to the proceeding by buying under a void order of sale, and of course he was chargeable with notice of the law, and that the court had no jurisdiction to make such order.   Still, this court found that in fact he had acted in good faith, and was entitled to protection.   It seems to me that purchasers of property who receive it for value, after it has passed through many hands, have a much stronger claim.   But I merely mention this case to show the position of such a purchaser in equity, as defined by this court, and not for the purpose of conceding that the defendants Goldsmith are in that position.

That the attack in this case is collateral and not direct, seems to be conceded by counsel for plaintiff.   He thus states the rule on page 148 of his brief: " When the validity of the record attacked is directly put in issue by the pleadings of the party attacking it, by proper averments, then the attack is

*direct* and not *collateral.*" The converse of what is here said must be also true, and that is: when there are no proper averments attacking the record, the attack is then *collateral*, and not *direct.* In case of a collateral attack, this court decided, in *Heatherly* v. *Hadley*, 4 Or. 1: "If the record contains a recital of the facts requisite to confer jurisdiction, it is conclusive when attacked *collaterally.*" In this record, so far as I have been able to discover, the *recitals* appear to be full and complete. It also appears that the sale in question was reported to the county court of Multnomah County, and duly confirmed by that court, and a deed ordered to be executed. Now I think persons who are strangers to this record, and who have acquired rights upon the faith of it, for which they paid value, have a right to ask the court to invoke the ordinary presumptions as to jurisdiction and regularity for their protection. It is to be presumed that what was done was rightly done, until the contrary is made to expressly appear, and that, too, in proper legal form.

But counsel insists that all of the various provisions of the statute, relative to the sale of the property of a ward, are, in effect, mandatory, or in their nature jurisdictional; and compliance with the statute must be shown affirmatively, or jurisdiction is not made out. For instance, it is claimed that section 8, p. 739, General Laws, which requires that " a copy of the order shall be personally served on the next of kin of such ward, and on all persons interested in the estate, at least ten days before hearing of the petition," etc., is of that nature, and that unless this section is shown to have been complied with, the whole proceeding is a nullity. Amongst other authorities, much reliance appears to be placed on *Mohr* v. *Tulip*, 40 Wis. 66. But this case was expressly overruled in *Mohr* v. *Porter*, 51 Wis. 487, on this point, and it was there held: " In a statutory proceeding by the guardian of an insane person for the sale of the real estate of his ward, he represents the ward; and when a proper petition has been presented by the guardian to the proper county court, that court has jurisdiction to order such sale, and its determination would be

binding on the guardian and ward, even though it were not binding upon other parties having adversary interests without due notice on them." And this latter view is also announced in *Mohr* v. *Manierre*, 101 U. S. 417, and is certainly supported both by the better reason and the better authority.

Counsel for the plaintiff has also argued with much ingenuity, that the *petition* of the guardian for the sale of the property was insufficient to give the court jurisdiction to act in the particular case, for the reason that the petition is for the sale of the property to pay alleged debts. It is true, the petition mentions claims already accrued for the support of the children; but it then goes further, and alleges that they have no money or other estate whatever out of which to cancel such indebtedness for maintenance, or with which to provide *for their future maintenance,* etc.; and the future maintenance of said minors is elsewhere referred to in said petition as one of the reasons for making the sale. It is true, that payment of the alleged debt is also referred to as reason for making the sale; but in the present condition of this case before us, the only possible question that could arise on this part of the record is, Did the petition for the sale state *any cause* which, under the law, would have authorized the court to order a sale?—and we must say that it did. The petition showed there was no income from the estate, and that its sale was necessary to maintain said wards, thus bringing the case directly within the provision of Sec. 1, p. 738, General Laws, under which said proceedings were instituted. The case became *coram judice* when a petition was presented containing facts which would authorize the court to act. (*Wright* v. *Edwards,* 10 Or. 298; *Gager* v. *Henry,* 5 Saw. 237.)

It is argued further on the part of the plaintiff, that there was no sufficient notice of sale given. The proof, so far as the same is disclosed by this record, is that the notice was printed in the weekly *Oregonian* a newspaper of general circulation published in the city of Portland, in said county and state, the first publication being in the issue of August 13, 1870, and the last in the issue of September 3d, 1870. By the terms of said

notice the sale was to and did take place on Saturday, the 24th day of September, 1870. There is an affidavit in the record made by A. J. Moses, to the effect that on the 17th day of August, 1870, he posted up notices of said sale in three public places (particularly describing them) in the city of Portland, etc. The jurat to this affidavit appears to have been made August 5th, 1870. In addition to this evidence of notice, there is also the report of sale made by the guardian to the court, in which it is recited that said guardian gave public notice of such sale by causing notice thereof (Exhibit B) to be published once each week for four weeks successively in the weekly *Oregonian* newspaper, published in Multnomah County, in the issues of August 13th, 20th, 27th, and Sept. 3d, A. D. 1870, and by posting up printed copies of said notice (Exhibit B) for over four weeks successively, in four of the most public places in Multnomah County, State of Oregon, prior to such sale. In each case reference is made to the affidavits attached to such notice. The order of the court confirming the sale contains the following findings as to the notice : " And it appearing to the court by affidavits filed with said report of sales, that said C. S. Silver, guardian aforesaid, had given public notice of the time and place of sale as required by law, by publication of a notice thereof, particularly describing the interest of each ward, for four successive weeks prior to the day of sale, in the weekly *Oregonian*, a weekly newspaper published in Multnomah County, State of Oregon, and by posting up four similar notices in four of the most public places in Multnomah County, Oregon, four weeks prior to such sale." The statute in such case prescribes the same notice as in case of the sale of real property on execution. (General Laws, 739, Sec. 12.) And notice of sale of real property on execution must be given by posting a notice, particularly describing the property, for four weeks successively in three public places of the county where the property is to be sold, and publishing a copy thereof once a week for the same period in a newspaper of the county * * * " (Civil Code, Sec. 287, Subd. 2.)

On the face of these records, counsel for the plaintiff insists

that we ought to find that there was no evidence of the fact
that notice of sale had been given by the guardian.   To this
we cannot accede.   It is true, there appears to be some dis-
crepancy in the date of the verification made by Moses; but
undoubtedly it was a clerical mistake.   Such mistakes are not
unusual, and it would be a harsh rule to say that they are fa-
tal.   The court would rather intend that the affidavit was made
on some day after the notices had been posted.   A like intend-
ment was allowed to prevail in *Russell* v. *Lewis*, 3 Or. 380.
It is true, that case, as reported, only appears to have been
decided by Thayer, J., on the circuit, who was then also a
member of this court; but the cause was brought here on ap-
peal, where his judgment was affirmed, though no opinion ap-
pears to have been written.

Nor can we adopt the construction that the proof must show
that the notice was given for four weeks *next preceding the
sale.*   Those words are not in the statute, and it is not the
province of the court to insert them by construction.   " For
four weeks *successively,*" is the language of our code.   The
word successively, as here used, is to have its ordinary meaning;
in a successive manner, in a series or order; following in order
or uninterrupted course.

The other objections as to the validity of this record do not
require particular notice.   We have carefully examined them,
and are entirely satisfied the same are not well taken.   In stat-
ing these conclusions we are only reiterating what may be re-
garded as the settled law of this court.   Said Lord, J., in
*Wright* v. *Edwards, supra:* " Where there is a matter of
substance upon which jurisdiction can hinge, mere errors or de-
fects, although material in some respects, but which might have
been avoided on appeal, cannot avail to condemn a judicial pro-
ceeding, when by lapse of time an appeal is barred, which has
become the foundation of title to property." (See also *Arrow-
smith* v. *Harmoning*, 42 Ohio St. 254.)   The following author-
ities tend to support our construction of this law : (*Hanmann*
v. *Mink*, 99 Ind. 279 ; *Robertson* v. *Johnson*, 57 Tex. 62 ;
*Bunce* v. *Bunce*, 59 Iowa, 533 ; *McKinney* v. *Jones*, 55 Wis.

39 ; *Watts* v. *Cook*, 24 Kan. 278 ; *Cocks* v. *Simmons*, 57 Miss.
183 ; *Spring* v. *Kane*, 86 Ills. 580 ; *Lynch* v. *Kirby*, 36 Mich.
238 ; *Wade* v. *Carpenter*, 4 Iowa, 361 ; *Matter of Conrad
Harvey*, 16 Ill. 127.)

We have already said that we cannot try the question of fraud
in this case, for the reason there are no pleadings and no issues
on that subject. If fraud entered into the original proceedings
of the guardian in procuring or conducting the sale, it might
be a reason for setting aside his proceedings in equity, on the
application of any one injured by such fraud. In such case
his proceedings were not absolutely void—but voidable at the
election of the party injured—and such party ought to make
his election by bringing a suit to avoid the sale within a reason-
able time after attaining his majority—or after knowledge of
the fraud.

Acquiescence for an unreasonable time after notice of the
fraud, and after such minor had reached his majority, would
be a waiver of the right to complain of it.

It was expressly admitted on the argument, by counsel on
both sides, that a clerical error appeared in this record in using
the word " circuit " before the word "·court," and that the
original record read " county court." But in the absence of
such admission, it is too plain for argument that it is a mere
clerical error, and that it is not entitled to a moment's considera-
tion. The error is manifest from the connection in which it
occurs, and by reference to the other parts of the record.

We have no doubt that in partition suits, where questions of
fact are to be tried, it can only be done on regular issues joined
between the parties, as in other cases. Any other practice
would tend to very great uncertainty, and introduce intermin-
able confusion. The allegations and proofs must agree in this
class of suits, as well as all others under the code. The rule is
elementary, and has not been changed or altered, or at least
counsel for the plaintiff has cited no authority to support his
contention, and we have been unable to find any.

Counsel for the plaintiff seems to claim with much confidence
that the decree in the Teal–Dickinson case cut off or destroyed

Goldsmith's title, because his deed, or the evidence of his title, was not of record when that suit was begun, or when the defendant's answer was filed; and he cites *Utley* v. *Fee*, 39 Kan. 683, to support this position. It seems from the report that one Flint quieted his title as against the persons who appeared from the record to have title, and then conveyed to the plaintiff. The plaintiff claimed that under section 21 of the act relating to conveyances, all unrecorded deeds executed by Fisher and Hammond and others were void in law and in equity as to Flint and Flint's assignees. It is also said in the opinion : " Indeed, at the time when the decree quieting Flint's title was rendered, the unrecorded deeds held by the grantees of Fisher and Hammond were void as against Flint, *without any decree of any kind.*" (Comp. Laws of 1878, Ch. 22, relating to conveyances, Sec. 21). It thus appears from the case so much relied upon by the plaintiff, that it was the recording act of Kansas that destroyed the title of the grantees of Fisher and Hammond, and not the decree quieting Flint's title.

*Clark* v. *Conner*, 28 Iowa, 311, is also relied upon on this point. Language is there used broad enough to give color to plaintiff's claim, but it is immediately added :  " And, further, the sections of the code of 1854, being sections 506 *et seq.*, under which the tax foreclosure was had   *   *   *   provided that the tax purchaser should file his petition in the district court   *   *   *   in which action notice to the party and the service are to be the same as in case of a mortgage. And turning to section 2083 of the code of 1851, we find that a notice in a mortgage foreclosure must be served on the mortgagor, and upon all persons having *recorded* liens upon the same property. *Hence* we conclude that the tax foreclosure judgment was not void, for the reason that Spencer Moore, the defendant therein, had aliened the property to another whose deed was not recorded, etc." Here the court properly gave much weight to the statutory requirement as to the persons on whom notice was to be served, and might have decided the case on that point alone. Besides, it appears to have been a tax foreclosure suit, and such suits are frequently in the nature of proceedings *in rem.*

*Norton* v. *Birge*, 35 Conn. 250, is also cited to the same point; but after a careful examination of the case, I do not think it tends to support the plaintiff's contention.

*Leonard* v. *N. Y. Bay R. R. Co.*, 28 N. J. Eq. 192, is a case not cited by counsel, where the rights of a party under an unrecorded deed were cut off by a decree in a suit to which she was not a party; but the court placed its decision expressly on the statute in force in that state, and not on any common law rule.

So, also, in *Aldrich* v. *Stephens*, 49 Cal. 676, the same principle is announced, but the court is only applying the statute of California (Civil Code, Sec 726) to the facts before it. The contrary is announced as the rule in *Davenport* v. *Turpin*, 41 Cal. 100, where no statute is referred to by the court, and presumably there was none in force on that subject in California at that time.

So in *Lessees of Irvin* v. *Smith*, 17 Ohio, 226, a person not a party, and whose deed was not recorded, was not bound or concluded by a decree in a suit against his grantee; and it is expressly shown by this case that the doctrine of *lis pendens* has no application to such a state of facts. In addition to this, the court gives prominence to the fact that the deed in question was placed on record during the pendency of the suit and before a decree, just as Goldsmith's was here, so that the party prevailing in the suit had full notice of the deed before his decree was entered.

The statute of this state (General Laws, p. 518, Sec. 26), declaring the effect of omitting to record a deed, and in whose favor it operates, is as follows: "Every conveyance of real property within this state hereafter made, which shall not be recorded as provided in this title within five days thereafter, shall be void against any *subsequent* purchaser in good faith, and for a valuable consideration, of the same real property, or any portion thereof, whose conveyance shall be first duly recorded." Now if it be conceded that the plaintiff and those under whom he claims were purchasers in good faith and for value, still the decree under which they claim has never been

recorded, and Goldsmith's deed being first duly recorded, would be prior to their decree. Secs. 37 and 38, Gen. Laws, 520, provide for the recording of certain decrees, but they do not appear to be comprehensive enough to include decrees like the one in question.

On the question of fact suggested by the plaintiff's counsel, it suffices to say that the evidence offered satisfies me that the contract in evidence is real and not fabricated, and that Goldsmith paid the amount of money to which he testified for the land. Slight discrepancies after so long a time are to be expected, and do not weaken the force of the evidence offered. Besides, the plaintiff omitted to offer this record until about the close of the evidence, and the time for the taking of evidence had about expired. It was claimed upon the argument that the defendant Goldsmith would have taken more evidence but for this reason. However this may be, if the plaintiff relied upon the Teal–Dickinson decree as one of the muniments of title, he ought to have offered it in chief, and the defendant would then have had no reason to complain that he had not been given a fair opportunity to meet it.

The doctrine of *lis pendens* has been carefully examined, and without entering more at large into the discussion of the subject, I am satisfied it operates as notice only from the time the complaint is filed and the summons is served, and of such facts as are alleged in the pleadings, which are pertinent to the issue, and of the contents of exhibits. (*Centre* v. *The P. & M. Bank*, 22 Ala. 743 ; *Hayden* v. *Bucklin*, 9 Paige Ch. 511–515, note 1 ; *King* v. *Bill*, 28 Conn. 592 ; *Murray* v. *Ballou*, 1 Johns. Ch. 566 ; *Low* v. *Pratt*, 54 Ill. 438 ; *Miller* v. *Sherry*, 2 Wall. 237 ; *Jones* v. *Lusk*, 2 Met. [Ky.] 356 ; *Lewis* v. *Mew*, 1 Strob. [S. C.] 180 ; *Griffith* v. *Griffith*, Hoff. Ch. 153 ; *Stone* v. *Connelly*, 1 Met. [Ky.] 652 ; Freeman on Judgments, Sec. 199 ; 2 Pomeroy's Eq. Juris., Sec. 634; *Leitch* v. *Wills*, 48 N. Y. 585.) "The rule has existed for centuries, and we cannot dispense with it where it is fairly applicable. As it is, however, a hard rule, and not a favorite with the courts, a party claiming the benefit of it must clearly bring his case

within it; and it is said if he makes a slip in his proceedings, the court will not assist him to rectify the mistake." (3 Sug. on Vendors, 460; *Sorrell* v. *Carpenter*, 2 P. Wms. 482.)

This case has been argued with great research and ability by counsel on both sides, and exhaustive and elaborate briefs have been filed, in which all of the questions at issue, both of law and fact, have been fully discussed. After a careful review of the entire case, we have no doubt whatever of the correctness of the views herein expressed.

The decree of the court below will therefore be reversed, and a decree entered in accordance with this opinion, and the cause remanded to the court below for further proceedings. The appellants to recover costs.

THAYER, J., concurring—The vital question in this case is the effect to be given to the decree in *Teal* v. *Dickinson and Others*, referred to in Judge Strahan's opinion herein, upon the alleged interest of Louis Goldsmith in the property in controversy, conceding that he contracted for the purchase of it and paid the purchase price prior to the commencement of the suit in which the decree was entered. The statutes of Oregon declare that the effect of a judgment, decree or final order in any action, suit or proceeding before a court, or judge thereof, of this state or of the United States, having jurisdiction to pronounce the same, in all cases *in personam* is, in respect to the matter directly determined, conclusive between the parties and their representatives and successors in interest, by title subsequent to the commencement of the action, suit or proceeding, litigating for the same thing, under the same title, and in the same capacity. (Sub. 2 of Sec. 723, Civil Code.) This statute, I believe, is the only law on the subject to be invoked upon the question. I do not believe that the *lis pendens* doctrine has anything at all to do with it. The statute declares the law respecting it in unmistakable terms, and the court has only to apply it to the case. The decree referred to was rendered against Teal, in a suit brought by him to quiet his title to certain real property, including the premises in controversy, and which he

claimed to own in fee. The decree is made conclusive by the statute as against Teal, and his representatives and successors in interest by title subsequent to the commencement of that suit; so that neither he nor they can, in any other litigation concerning the property, claim to be the owner of it. If Louis Goldsmith, therefore, is a successor in interest by title subsequent to the commencement of that suit, he is concluded by the decree. I do not understand that a decree in a suit to quiet title transfers the title from the person against whom it is obtained to the one obtaining it; but it precludes him from asserting any ownership of it thereafter, and also his representative and successor in interest by title subsequent to the bringing of the suit. It determines that neither he or they are owners of it. The statute is declaratory of the law in the premises, and it is unnecessary to look beyond its provisions. The question before the court is, whether Louis Goldsmith owns, by title subsequent to the commencement of that suit, his alleged interest in the property, if he purchased indirectly from Teal the three-eighths interest, as claimed in his testimony. This presents a pure, simple question of law which the court must declare, without regard to the effect it may have upon the parties litigant. The public welfare is much more important than their interests in the case, and it should be determined according to the best judgment of the court, and leave the consequences to fall upon whom they may.

I am of the opinion that if Solomon Goldsmith made the contract with Teal for the purchase of the property, and paid the consideration price as he alleges in his testimony, and conveyed to Louis Goldsmith, the latter is not a successor in interest to Teal by title subsequent to the commencement of the suit, but that he was a purchaser anterior to that time and unaffected by the decree. It was claimed upon the part of the respondents at the hearing, that if Solomon Goldsmith did contract with Teal, to purchase for him the property prior to the commencement of the suit, and paid the purchase price therefor, and conveyed to Louis Goldsmith, yet the latter is concluded by the decree; that the respondent by force of the de-

cree occupies the same position as a purchaser in good faith, and
for a valuable consideration.   This view cannot be maintained
upon principle or authority.   A purchaser in good faith ac-
quires an equity, by reason of his having paid the purchase
money without notice, actual or implied, or knowledge of any
fact sufficient to put him upon inquiry, and under a well
grounded belief that he is acquiring a complete and valid title
to the property; and then his equity is only equal to the out-
standing equity; but the law adjudges him as having the bet-
ter right upon the ground that he has acquired the legal title,
which, under the equitable maxim, prevails when the equities
are equal.   A judgment or decree, upon the other hand, ob-
tains its force from the statute, and to give the statute in ques-
tion the construction contended for would make it speak an
untruth, as it contains a negative affirmation excluding every
inference that the judgment or decree affects a successor in in-
terest by title anterior to the commencement of the action or
suit in which it is recovered.   A decree may have been ob-
tained in consequence of an inability upon the part of the party
against whom it is recovered to obtain this proof, or through
false testimony, or on account of the ignorance of his counsel,
or by the error of the court rendering it; still, the law sur-
rounds it with a presumption of its own rectitude; but the law
does not certainly extend its effect so as to determine the rights
of strangers to the suit.   It operates, in cases like the present,
only upon the parties and their privies; as to all others it is *res
inter alios acta.*   Again: a person claiming to have been a
bona fide purchaser must plead specially the facts from which
he claims to be such, and must deny all notice of the outstand-
ing equity up to the very time he paid the purchase money.
He must show facts that address themselves to the conscience
of the chancellor : while the effect of a decree is an inflexible
rule of law established by public policy, and maintains a fixed
status; no fact or circumstance can restrict or extend its force.
Positive law has established its limits, which are the *ne plus
ultra* extent of its effect.   Whether Solomon Goldsmith testi-
fied to the truth, when he swore that he made the purchase of

the three-eighths interest, is a question of fact.   His evidence is corroborated by the testimony of his brother, Louis Goldsmith, and by the records and files of the circuit court of the United States for the district of Oregon; and no reason is assigned or motive shown for getting up such a contract at the time the proof shows strongly that it was in existence, as a mere sham, or for any purpose other than to carry out a business transaction; and I do not believe that we have a right to discard the evidence upon that subject in consequence of any inconsistencies shown or incredible statements made by the persons in their cross-examination as witnesses in the case.   I agree with the opinion of Judge Strahan upon the other points of the case, and concur in the result arrived at.

LORD, C. J., dissenting.—As I am unable to concur in the result reached by my associates, the importance of the principles involved must be my excuse for a statement of the grounds of my dissent.   I hold that the decree rendered in the suit of *Teal* v. *Dickinson et al.*, is a conclusive bar against Goldsmith's title in the present suit, for the reason that he is the grantee or successor in interest of Teal, by title subsequent to the commencement of that suit.   The decree in that suit was to the effect that the fee simple was not in Teal, but the defendants, in the proportions named therein; and that Teal, nor any person claiming by, through, or under him, has any right, title, or interest in or to said premises, or any part thereof.   It is provided by the code, that " The effect of a judgment, decree, or final order in an action, suit or proceeding before a court or judge thereof of this state, or of the United States, having jurisdiction to pronounce the same, is as follows : * * * The judgment, decree or order is, in respect to the matter directly determined, conclusive between the parties and their representatives and successors in interest by title subsequent to the commencement of the action, suit, or proceeding." (Code, Sec. 723, Sub. 2.)

It is not disputed but that the " matter directly determined " by the decree in that suit is the identical title asserted by Gold-

smith in the present suit; nor that he derived his title from
Teal after the complaint was filed, summons issued and deliv-
ered to the proper officer, and service had on one of the de-
fendants. If these acts—the filing of a complaint and the
causing of a summons to be issued and delivered to the sheriff
—constitute, within the meaning of the code, the commence-
ment of a suit, Goldsmith is in privity with Teal, and bound
by the decree. In his complaint Teal alleged that " He was
the owner in fee simple, and in possession of the premises " de-
scribed ; and by force of the provision referred to, it is the title
at the time of the commencement of his suit of which the de-
cree rendered therein is conclusive, not only as against him,
but against all who claim title under him, subsequent to the
commencement of that suit. It becomes important, then, to
ascertain the definition of the " commencement of an action "
or suit within the meaning of the code.

At common law an action is commenced by issuing a writ,
and in some of the states that rule is practically adhered to or
declared by the statute. In New York it is provided that an
action shall be commenced by the service of a summons.
(Code of 1872, Sec. 127.) The same is declared in Minne-
sota. (Statutes 1878, Sec. 52, p. 714.) In California, Kansas,
and Indiana, a civil action is commenced by filing a complaint
and the issuing of summons thereon. (Cal. Code, 1872, Sec.
22 ; Com. L. of Kansas, 1879, Sec. 57, p. 608 ; Rev. Stats. of
Indiana, 1881, Sec. 314.) By reference to the decisions un-
der these different provisions, it will be noted that the lan-
guage is resorted to and controls in determining what consti-
tutes the commencement of an action. To illustrate : In *Depuy*
v. *Shear*, 29 Cal. 238, Sawyer, J., said : " The complaint in
this case was filed, and summons issued thereon, on the 26th
day of July, 1855. A suit was, therefore, commenced on that
day, within the provisions of section 22 of the practice act."
Again : " The practice act prescribes the mode of commencing
suits and acquiring jurisdiction of the parties. The proceed-
ing is controlled by its provisions, and not by the rules of
practice which prevailed at common law. * * * The acts of

filing a complaint and issuing summons were both performed, and a suit was, therefore commenced." Our code in reference to the commencement of an action is equally plain and precise. It provides that "actions at law shall be *commenced* by filing a complaint with the clerk of the court. * * * At any time *after* the action is *commenced*, the plaintiff may cause a summons to be served on the defendant," &c. (Civil Code, Sec. 50.) This provision is made applicable to suits in equity (Civil Code, Sec. 385), so that the same meaning applies to the commencement of a suit in equity as an action at law. The action or suit is commenced by filing the complaint, and after it is commenced, that is, by filing a complaint, the plaintiff may cause a summons to be served on the defendant.

On the fifth day of May, 1880, Teal filed his complaint with the clerk of the court, and delivered a summons to the sheriff to be served on the defendants. A suit was, therefore, commenced on that day within the meaning of the section cited. It is not claimed that the court acquired jurisdiction of the defendants until there was service upon them. But, in this particular, the case stands different as to Teal. When he commenced his suit by filing a complaint, and, at the same time, caused a summons to be delivered to the officer to be served on the defendants, he necessarily invoked and submitted himself to the jurisdiction of the court. As to Teal, the suit was not only commenced, but jurisdiction was acquired, on the 5th day of May, 1880, and when service was obtained upon the defendants, and the cause proceeded regularly to judgment or decree on issue joined as to the title alleged in his complaint, whoever, after that date—the commencement of the suit—acquired an interest or title in the subject matter of that suit of Teal, as Goldsmith did, took such title subject to, and is bound by, the decree rendered therein.

Taking, then, these provisions of the code together, viz., that " by filing a complaint with the clerk " a suit is " commenced," and the conclusive effect to be given to a decree, against " a successor in interest by title subsequent to the commencement of the suit," and Goldsmith holding a derivative title from Teal

after the filing of complaint—the commencement of the suit—
the decree is as effectual as to him as his grantor Teal.  Priv-
ies, within the meaning of this rule, are those who are succes-
sors in interest of the matter or title directly determined, by title
subsequent to the commencement of the suit, and under the
familiar and elementary rule are bound by the decree, although
not made parties.  By taking his title in that manner, Gold-
smith placed himself in legal privity with Teal, part of whose
interest or title he purchased, and which was affected by the
decree.  It may be hard, as remarked in Buller's Nisi Prius,
" that a man should be injured by a determination that he, *or
those under whom he claims,* was not at liberty to controvert."
But the party under whom Goldsmith claims did have that lib-
erty and opportunity.  He instituted the suit, and brought the
defendants into court *in invitum,* by force of the summons he
caused to be served, and compelled them to adjudicate the title
alleged in his complaint.  The whole matter as thus alleged
was controverted by pleadings, by evidence and by argument.
The truth is, however, there never was any " hardship in hold-
ing that a man should be bound by that which would have
bound those under whom he claimed *quoad* the subject matter
of the claim; for *qui sentit commodum, sentire debet et onus,*
and no man can, except in certain cases excepted by the stat-
ute law and the law merchant, transfer to another a better right
than he himself possessed."   (2 Smith's Leading Cases, 624.)
Yet such is the consequence of the decision in the present suit.
It holds, in effect, that the decree in the Teal–Dickinson suit
does not operate as an estoppel against Goldsmith.  Teal has
been able to transfer a better right—a better title, than he pos-
sessed.   The stream has risen above its source, a thing which
cannot be true in law or philosophy.

In nearly all the states there is a statutory provision, to the
effect that in any action affecting the title to real property, the
plaintiff, at the time of filing the complaint or at any time af-
terwards, may file with the clerk of each county in which the
property is situated a notice of the pendency of the action,
containing the names of the parties and the general nature of

the action, etc.   From the time of its filing it operates as constructive notice of the pendency of such action, and whoever purchases thereafter the property affected thereby, is bound to the same extent as if he were made a party.   Under these statutes it will be observed that the notice to purchasers or encumbrancers dates from the filing with the officer; while at common law, the *lis pendens* and consequent notice only began from the service of the subpœna, or other process, after the filing of the bill, so that the court may have acquired jurisdiction of the defendant. (2 Pom. Eq. Jur., Sec. 634.)   At common law, also, the averments of the bill " must be so definite that any one on reading the case can learn what property was intended to be made the subject of litigation," in order to operate as notice.

We have no statutory provisions upon this subject.   But it seems to me that the sections cited, when taken together, and of which all persons are bound to take notice, are calculated, if not designed, to include this object.   By filing the complaint with the clerk—it necessarily containing proper and specific averments of the subject matter to be litigated, and the names of the parties to be affected thereby—a suit is commenced, and operates, under Sec. 723, as constructive notice of the pendency of the suit and the subject matter involved for judicial determination, against all persons who purchase or acquire an interest of the parties by title subsequent to the commencement of the suit, making the decree rendered therein conclusively binding on them to the same extent as if they had been made parties.   To hold otherwise, would allow the plaintiff, by such alienation of title after suit commenced, to defeat any judgment or decree adverse to him, and subject the defendants to the annoyance and expense of another defense, again to be defeated by a similar course of proceeding.   Usually, and in fact in all the cases which have come under my observation, the question is raised as to the purchasers from the defendant; but the reason of the rule applies with much greater force to him deriving title from the plaintiff who instituted the suit, and brought the defendants into court.

But to obviate this effect, it is said that prior to the commencement of the suit of *Teal* v. *Dickinson et al.*, Goldsmith had made a contract with Teal for the conveyance of this identical land which Teal deeded to him after the commencement of that suit ; and, consequently, he had an equitable estate in the lands antecedent to that suit, which was unaffected by the decree, unless he was made a party to the proceeding. But in' this case his equitable estate depends upon Teal's having title to the lands. By taking title from Teal subsequent to the commencement of the suit, he is bound by the decree as to that title. The decree adjudged the title to be in the defendants— that Teal had no title—and consequently, there is no title upon which the equitable estate can rest. In a word, if Teal had no title, as the result proved, his contract could create none, legal or equitable. If I am right in this point, it is decisive of the case.

It only remains now to consider wherein I differ with my associates in the application of the law to the facts in avoiding the doctrine of *lis pendens*. As I understand it, the reasoning of the decision is, that equity treating that as done which was agreed to be done, Goldsmith, under the contract referred to, acquired an equitable estate or interest in the lands prior to the commencement of the suit of *Teal* v. *Dickinson et al.*, and that in order to bind him by the decree rendered therein, he must have been impleaded, notwithstanding he acquired his title to such property by deed from Teal after the suit was instituted. His equity is thus made antecedent to that suit, and put beyond the reach of the doctrine of *lis pendens*.

Now, there are some facts which are undisputed, that need to be stated and kept in view, to properly understand how the law has been applied to the facts of this case. With the exception of one-eighth, the land which was the subject matter of the suit in *Teal* v. *Dickinson et al.* is the subject matter of the present suit. After that suit was commenced, Teal made and delivered his deed to Goldsmith, which on its face purported to convey then, and of that date, the land in question; but the deed was not recorded till more than two months thereafter

and after the defendants had been served and answered in the suit. There is no pretense that the defendants in the former suit had any knowledge or notice, actual or constructive, of the equitable estate or interest acquired by Goldsmith under the contract of 1878. Whatever of advantage might have accrued to Teal in the prosecution of the former suit, would have inured to the benefit of Goldsmith as against the defendants. The result, as we have seen, proved otherwise. The court held that the defendant had the superior or paramount title ; or in fact, that Teal had no title whatever. Now Goldsmith claims that he is not bound by that decree, because he was not made a party to the suit, although his deed purports to be a conveyance of the lands after the suit was commenced ; and that the doctrine of *lis pendens,* invoked by the plaintiff in the present suit, is not applicable to him, because, under his contract with Teal, he acquired an equitable estate anterior to that suit. But how is that equity made antecedent as to the defendants in the suit of *Teal* v. *Dickinson et al.* ? It is said that in equity an agreement for the sale of land, although executory, is treated as executed, and operates to transfer the estate from the vendor and to vest it in the vendee; so that Goldsmith, by force of his contract, acquired an estate or interest in the land which was prior to the suit. The maxim of equity is that " equity regards that as done which ought to be done." It is the presence of the " ought "—the equitable duty which imposes the obligations upon the consciences of *the parties to the contract,* and induces equity to treat as done that which ought to be done. It has no reference to third parties unaffected by notice. Nor will equity thrust aside the law where the contract is still executory, and no estate is vested in or acquired by the vendee, to push forward a concealed equity as against third parties without notice. It creates no rights destructive of the interests of third parties, without notice actual or constructive of that contract. " What ought to be done is considered in equity as done," and its meaning, Mr. Adams says, " is, that whenever the holder of property is subject to an equity in respect to it, the court will, *as between the*

*parties to the equity*, treat the subject matter as if the equity had been worked out, and as impressed with the character which it would then have borne." (Adams Eq. 135. " But," says Judge Story, "equity will not thus consider things in favor of all persons, but only in favor of such as have a right to pray that the acts might be done." (Story's Eq. Jur., Sec. 249. See also Pomeroy's Eq. Jur., Secs. 363, 368; Pomeroy on Contracts, 290.)

It is plain that this equitable construction of contracts is only applied to the parties or grantees with notice, upon whom an equitable duty is devolved, and will not be extended so as to affect injuriously the rights of third persons. As to these, equity will not regard the contract as executed, and as operating to transfer an estate, but will rather leave it as at law, which imparts no property right whatever. In this view, Goldsmith acquired no antecedent equity or property in the land, or other title, until the contract was executed by performance, and he became invested by his deed with whatever title, legal or equitable, Teal had. He then became a purchaser of the land, and acquired a property in it; but this was not until after the suit was commenced, and by the doctrine of *lis pendens* he was bound by the decree rendered against his grantor, Teal.

I am aware that it is laid down by the text-writers that the rule applies only to rights or interests acquired from a party after the institution of the suit, and not to the case of a right or equity antecedently acquired. (2 Pomeroy's Eq. Jur., 637; Wade on Notice, Sec. 160.) But the question is, When, upon the facts, will such rights or equities be treated as antecedent, when property was conveyed after the suit was commenced? Mr. Pomeroy says : " If a person has acquired a prior right to the specific land, the commencement of a suit affecting the same land will not invalidate any act which he may subsequently do in pursuance of such antecedent right, or for the purpose of carrying it into effect." (Sec. 637.) Now note the illustration given in the notes. " For example," he says, " the bringing of a suit against A as the owner of land is not notice to B, a prior vendee from A, who is in *actual possession*, and will not

prevent him from subsequently taking the necessary steps to complete the purchase and obtain a deed of conveyance." But his " actual possession " does charge the party bringing the suit with notice that he has an interest, or some right of property in the land, and that he must make him a party, or he will not be bound by the decree. And so here, if Goldsmith, under his contract, had gone into possession of the land, or done any act or thing which would have been the equivalent of notice, the defendants in the suit of *Teal* v. *Dickinson et al.* would have been charged by the law that it was necessary to make him a party, otherwise the decree would not bind him. It is unnecessary to say there is no pretense of any facts from which such notice may be inferred. Goldsmith had actually done nothing under his contract that charged third parties or the defendants in that suit with notice of any equity or interest he had acquired in the land ; and what is still worse, the deed which was executed to him after the suit was commenced was pocketed, and not recorded for more than two months afterwards ; the suit all the while being prosecuted by Teal for the whole interest, with whom, to say the least, he had an identity of interest, and the court jurisdiction of all the parties.

Under this state of facts, I propose now to make a brief examination of the authorities cited, for the purpose of ascertaining whether the facts to which the law is applied in them differ in any essential degree from the facts here.

In *Parks* v. *Jackson*, 11 Wend. 442, the court held that the institution of a suit was not notice to a prior purchaser, who had gone into possession, and made expenditures on the faith of the purchase, although his deed was not in fact executed until the institution of the suit. In *Trimble* v. *Boothby*, 14 Ohio, 115, the defendants had taken possession and paid the consideration money, under the contract to sell the land, prior to the commencement of the suit. The court says : "If the interest in these lands acquired by purchase from Kerr was to be affected by the suit of Morris' devisees, such interest existing prior to the commencement of the suit, the persons so interested should have been made parties. Not having been

XIV. OREG.—11.

made parties, it was their right to clothe their equity with the legal title. The opinion must be read in the light of the facts. The parties were in actual possession under their contract, and nothing is better settled than that this constituted notice."

In *Clarkson* v. *Morgan's Devisees*, 6 B. Monroe, 445, the court say : " There is evidence tending strongly to the conclusion that Fowler had *acquired the possession*, claiming the same in his *own right*, before the bill was filed. He certainly, before the bill was filed, claimed and exercised a right to the possession, and sold land to James Marshall, one of the complainants, in April, before suit was brought, who must have entered upon the same immediately." The italics are the court's.

In *Haughwont* v. *Murphy*, 22 N. J. Eq. 545, the court say: " But the defendant was not a purchaser *pendente lite :* he acquired title by deed which bears date on the 7th day of August, 1865, and was acknowledged on the next day.   *   *   * The proof, however, is full and clear, that it was executed and delivered to Murphy *before* the bill was filed in the case of *Haughwont* v. *Boisaubin*. The commencement of a suit in chancery is constructive notice of the pendency of such suit, only as against persons who have acquired some title to or interest in the property involved in the litigation, after the suit was commenced.   A person whose interest existed in the land at the commencement of the suit is a necessary party, and will not be bound by the proceeding unless he be made a party to the suit." By reference to the statement of facts in this case, the reader is referred to *Haughwont* v. *Murphy*, 21 N. J. Eq. 122, in which the court say : " Murphy might have been made a party to the bill against Boisaubin ; he was a proper if not a necessary party ; and if his deed was not known to Haughwont at the filing of the bill, he had notice on the filing of the answer in Oct., 1865, and might have amended his bill so as to make Murphy a party, or he might then have commenced suit against him."

Essentially as the facts differ in all these cases from the state of facts here, it cannot escape the attention that the pre-

vailing parties in all these suits had full notice, either posses-
sion or some equivalent fact, at the time of bringing the suit,
and thus opportunity to make them parties to the suit, and
bind them by the decree.   Have we not a right to infer—more
especially where title is derived from the plaintiff after the
commencement of his suit—in the absence of any fact to
charge notice, actual or constructive, that a different rule
would prevail as to the defendants?   These cases do not reach
the facts, or the law to be applied to them, as disclosed by this
record.   There is no claim that the defendants in the suit of
*Teal* v. *Dickinson et al.* had any notice whatever of the inter-
est of Goldsmith under the contract.   And without notice of
such interest, how was it possible for them to have made him a
party?   The law does not require the performance of impossi-
ble things.   Teal knew of his interest and brought the suit, and
the law devolved upon him the duty of bringing in all parties
to be affected by the adjudication.   But he may have thought,
as I think, that it was unnecessary, because Goldsmith was
identified with him in interest; and the rule is that " Whenev-
er this identity is found to exist, all alike are concluded."

Moreover, it seems to me in such case that a party's inter-
ests or rights ought not to be treated as vested—the contract exe-
cuted—and thereby made antecedent, until by going into pos-
session, or doing some other act, the defendants in that suit be-
came chargeable with notice of its existence.   The rule is that
such equitable estate of the vendee arising out of an executory
contract is only treated as executed, and only avails against
the vendor's heirs, devisees, and *grantees with notice.*   (Pom-
eroy's Eq. Jur., Sec. 368.)   Nor can I avoid the impression, that
to deprive the defendants now of the rights acquired by the de-
cree in the former suit, on the ground of Goldsmith's antece-
dent equity, and that to bind him he must have been made a
party, when no act of either Teal or Goldsmith was calcu-
lated or designed to impart notice, and when the defendants,
by the most active scrutiny, could have acquired no knowledge
of the existence of such equity, is the announcement of a prin-
ciple which is liable to result in the future in serious obstruc-

tions to the administration of justice.   The general rule, that a person whose interest existed at the commencement of the suit is a necessary party, and will not be bound by the proceedings unless he be made a party, is conceded.   But under the facts of this case, when the former suit was necessarily prosecuted as much in the behalf of Goldsmith as Teal, the title conveyed after his grantor had commenced suit, and the record disclosed Teal clothed with the full legal title, Goldsmith should be taken to have acquired his interest when the deed was recorded as to the defendants; which, being after the suit was commenced, and service had on all the defendants, comes within the operation of the doctrine of *lis pendens.*

In *Utley* v. *Fee*, 33 Kan. 689, the court say : "The title and estate of a person holding an unrecorded deed is, as to third persons without notice, wholly in the grantor, and the grantee is in privity with his grantor; and any decree rendered against the grantor affecting the grantor's title is also in effect a decree rendered against the grantee, and it equally affects his title ; and the decree is *res adjudicata* as to the interests of all."   ·

In *Norton* v. *Birge*, 35 Conn. 263, it was held that when a party to a suit had conveyed his interest in the land before the commencement of the suit, the deed not being recorded, the purchaser would be bound by the judgment.   " Otherwise," said the court, " the purposes of the suit, and the ends of justice in all such cases, would be defeated."   The party was deemed to have taken his deed *pendente lite.*   But here the deed was not executed or recorded until after suit and service. With stronger reason, upon the facts, why ought not the same rule apply to this case ?

I am aware it is claimed the doctrine of *lis pendens* does not stand upon the ground of notice, but that it is a rule of public policy, the effect of which is to impose a disability to convey the subject matter of litigation *pendente lite* (*Bellamy* v. *Sabine*, 1 DeG. & J. 580); and that the rule only applies to purchasers, and not to holders of previously acquired equitable interests in the property.   (Wade on Notice, Sec.  ) But it is a rule

of public policy that there should be an end of litigation, and I have endeavored to show that unless the decree in *Teal* v. *Dickinson et al.* operates as an estoppel and binds Goldsmith, there is no disability to convey the subject matter *pendente lite*, and there can be no end to the litigation. But the cases already referred to sufficiently illustrate the doctrine, and none of them are parallel with this; and in all of them there were facts which imparted notice at the commencement of the suit, which enabled the party bringing the suit to make the holders of such interests a party, or to take the consequences of his failure to do it, which cannot be charged against the defendants in *Teal* v. *Dickinson et al.* My conclusion is that the decree operates as an estoppel, and bound Goldsmith, and, of course, all who claim under him.