PHILESTER LEE and ELIZA A. LEE, Appellants, *v.* THOMAS S. SUMMERS and ELIZA SUMMERS, Respondents.

*Appeal from Linn County.*

1. When parties, having come to an agreement, reduce its terms to writing, no evidence of their contract can be received, other than the writing itself, or its contents; not in conflict with section 682.
2. A mere agreement to sell land does not constitute a license to the purchaser to enter.
3. A party, who would otherwise be estopped from setting up a particular fact, may avail himself of the truth, when the same fact is shown by his adversary's pleadings, and thus made a part of the record.
4. Rights of donee under a present grant from the United States.
5. Who may attack a patent from the United States.

THIS suit is instituted to compel defendant to execute a conveyance of the premises in controversy.

The complaint alleges, in substance, that on the 23d of October, 1850, the defendant, Thomas S. Summers, being in possession of 640 acres of land, known as the Summers' claim,

Lee *v.* Summers.

contracted with plaintiff, Philester Lee, that if Lee would purchase the possessory right of a certain land claim which adjoined the Summers' claim, and was known as the Simons' claim, and would surrender the east half of said Simons' claim to Summers, and pay Summers $500 in five equal yearly payments, Summers would surrender to the plaintiff a specific parcel of the Summers' claim, which parcel is the land in controversy in this suit.    That on the same day plaintiff purchased the right of Simons to the Simons' claim, and paid for it $700, and surrendered the possession of the east half of it to Summers.    That plaintiff moved on to the premises in controversy on the 23d of November, 1850, at defendant's request, and has continued to reside on it to the present time.

That said defendant, on the 14th of May, 1853, fraudulently proceeded to, and did, make his final proof at the land office in Oregon city, of his continued residence and cultivation of said tract under the donation law, knowing that he had not at any time resided upon or cultivated the same from the 23d day of November, 1850.

The answer after denying these allegations, avers that defendant settled on said Summers' claim in 1848, and has continued to reside upon and cultivate the same ever since that time, and avers performance of the acts constituting a compliance with the donation law ; alleges that the following is a copy of the only agreement ever made by defendant, Thomas Summers, with the plaintiff, viz :

*Santiam, Linn County, Oct.* 23, 1868.

" An article of agreement made and entered into by and between Thomas S. Summers and Philester Lee, witnesseth :

" *Know all men by these presents,* That I, Thomas S. Summers, of the first part, do agree to let Philester Lee, of the second part, have the undivided half of my claim, including one-half of my soda springs, for the undivided half of the Simons' claim adjoining mine, and five hundred dollars in equal annual installments.

" In testimony whereof, we have hereunto set our hands and seals.

" Thomas S. Summers, [Seal.]
" Philester Lee, [Seal.]
" Witness: Richard Cheadle."

The answer charges that Lee moved on to the premises in dispute in the night time, violently, with force, without the consent and against the will of the defendants, and that plaintiff's continuance thereon has been without defendants' consent and against their will. That the land in controversy is a part of defendants' donation claim, and as such has been set off as the wife's part.

The pleadings also show that on the 14th day of May, 1853, defendant, Thomas H. Summers, filed a notification claiming the whole of the Summers' claim, and on the 28th of the same month the plaintiff filed a notification claiming that part of it which is the subject of this suit.

The complaint contains the following allegation: " In a contest between said plaintiffs and defendants, as donation land claimants to said tract of land in controversy herein, before the land office at Oregon city and before the commissioner of the general land office at Washington city, on appeal from the decision of the land office in Oregon city, the legal title to said tract of land was awarded to said defendants by said commissioner, by reason of the false and fraudulent statements and proofs made by said defendants before said land office and commissioner."

*J. C. Powell*, for appellants.

*Cranor & Helm*, for respondents.

Upton, J. The ground of complaint in this suit is substantially that the decision there made was procured by " false and fraudulent statements and proofs made by said defendant before said land office and commissioner.

Lee *v.* Summers.

The proofs in this case show that on the 23d of October, 1850, the parties conferred together in reference to a sale, surrender or abandonment to Lee of some privilege or interest in the Summers' claim, and in their conference it was proposed that the adjoining land known as the " Simons" claim should be obtained by Lee, and that Summers should take an interest in that tract. Simons was then temporarily absent in the Atlantic States, and one Carrol claimed to have some charge of the Simons' claim. The evidence is conflicting as to Carrol's right or power in the premises. Lee applied to Carrol and Carrol agreed to sell Lee the Simons' claim for $700. Lee accepted the proposition and paid Carrol $700. It does not appear that any papers passed, or that Simons ever received the money. Lee and Summers, on the same day (the 23d of October), came to an agreement as to the terms upon which Lee should obtain an interest in the Summers' claim, and they went together to a Mr. Cheadle and asked him to reduce the terms of their agreement to writing. Mr. Cheadle drew up, and Lee and Summers subscribed, the writing of which a copy is above set forth. According to the evidence this is the last attempt at bargaining that took place between Lee and Summers. Summers testifies that, owing to opposition to the plan on the part of Summers' wife, he (Summers) informed Lee, within an hour after signing the paper, that he (Summers) would not consider the agreement binding, nor part with an interest in his claim. Lee went immediately to Marion county and remained there at his former residence a month. On the 23d of November, 1850, he returned with his family and pitched a tent on the premises in controversy. Summers learned this fact about nine o'clock of that evening and went to Lee's tent and ordered him to leave the premises.

It does not appear that Summers ever had possession of any part of the Simons' claim or that Lee was ever in possession of the east half of it, which, in the complaint, he alleges he surrendered to Summers. The evidence shows that some

months after Lee bargained with Carrol, Simons returned and held possession of the whole Simons' claim, 640 acres. But sometime later he abandoned the west half and Lee took and still holds that half.

Simons was a witness, and says, in evidence, on the trial, I took my claim in 1848, improved it in 1849, and sowed grain on it in 1850. In June, 1850, I went to the States for my family, returned in October, 1851, to my claim. Lee came to me and wanted me to leave it. He said he had bought it of Carrol, and sold part of it to Summers. He said: "If you don't leave it I cannot hold Summers to the trade." I remained, and am on it yet. I could not hold but half of it, and threw off the west half and Lee took it. I did not authorize Carrol to sell or take possession of my claim. I did not leave my claim in the care of any one. The evidence shows that the first hundred dollars was duly tendered by Lee and refused by Summers.

There is conflicting evidence on many matters of fact alleged in the pleadings. But the conflict is confined principally to matters which the court does not deem of vital importance in the determination of the case.

The plaintiff's possession must be referred to a claim of right asserted by him under the agreement made October 23d, 1850, or he must be deemed an intruder without color of right. The former is the more probable conclusion, and one warranted by all the circumstances of the case.

In considering whether such relations exist between Lee and Summers as set aside the patent issued to Summers, or hold Summers a trustee under the patent to the use of Lee, it is necessary first to ascertain what was the contract made on the 23d of October, 1850.

The theory presented in the complaint and urged by appellants' counsel is that the real contract was oral and was made on the same day, but before the writing was made, and that the terms of the agreement are not those stated in the writing.

When parties, after coming to an agreement, deliberately reduce its terms to writing and attest it with their hands, the rule is, that no evidence of their contract can be received except the writing itself or evidence of the contents of the writing. The rule in regard to correcting imperfections and mistakes in the writing and in regard to contesting the validity of the writing, which are briefly referred to in *section* 682 *of the Code*, are not in conflict with this general and fundamental principle of the law evidence.

Without examining the question whether the pleadings put in issue any alleged mistake or imperfection in, or the validity of, the writing above quoted, it is decisive in that respect that the evidence shows, beyond question, that both parties appeared and deliberately stated the terms of the agreement and caused them to be written down; and there is no evidence tending to show that those were not written correctly, or that they were not in accordance with directions given and assented to by both parties.

All previous proposals and offers merged in the agreement there assented to by the parties and solemnized by the signatures and seals. (*Code, section* 682.)

This writing cannot be regarded as an executed contract, or as evidence of a sale of land, but it is, by its terms, an agreement to sell. "A mere agreement to sell land does not constitute a license to the purchaser to enter." (*Erwin* v. *Olmstead,* 7 *Cow.,* 239; 9 *John.,* 35; 3 *Ib.,* 424.)

It was said in argument that the agreement was of such a character as to estop Summers from settling up title to the land.

But in this case, the plaintiff has alleged and proved the very fact which he says the defendant is estopped to plead or prove; that is, that the legal title is in the defendant.

A party who would otherwise be estopped to set up a particular fact, may avail himself of the truth when the same fact is shown by his adversary's pleadings, and is thus made a part of the record in the case. (*Sinclair* v. *Jackson,* 8 *Cow.,* 543, 586.)

On the 23d of October, 1850, the passage of the donation law was not yet made known to the parties, and that fact is entitled to whatever consideration it. may deserve in construing the written agreement by the light of surrounding circumstances, and in ascertaining what was the intention of the contracting parties. But when their intentions are ascertained, their knowledge or want of knowledge in that respect is entitled to no further consideration.

For the purpose of arriving at their intentions, it is just to regard them as intending to deal with what is denominated possessory rights, or that species of title which one obtains by an actual possession, without any higher right.

For the terms of the contract we are compelled to resort to the written agreement; but in construing it the situation of the parties and their means of knowledge may be properly taken into consideration. But it is not perceived how these circumstances tend to give the agreement the character of an executed contract.

If the parties believed Summers had no title but bare possession, it may be construed as an agreement that he would abandon his intention of acquiring that particular tract of land, or the half of it, and leave it open to the possession of another, and his failure to do so may have been a breach of the contract; but in that case he would be answerable in damages, and his breach of the agreement could be redressed by a judgment in money for the amount of damages suffered.

But having ascertained what was the agreement actually made, we are to consider what was the actual condition of the parties at the time.

On the passage of the donation law, which was before the making of this agreement, Summers was a settler on and occupant of the then public lands known as the Summers' claim, and he was qualified to take as a donee under section four of that act.

The act is in words of present grant, and actually conveyed to him the legal title to the premises. (*Fremont* v. *The United States*, 17 *How.*, 559.)

"When Congress grants lands in words of present grant," the legal title passes to the grantee. ( *Wilson* v. *Jackson*, 13 *Pet.*, 499; 6 *Cranch*, 128; 8 *Ib.*, 244; 12 *Pet.*, 454; 2 *Wheat.*, 198.)

The cases just cited show that the title vests immediately in the donee; not the less because the title vests in him conditionally and subject to be defeated by his failure to comply with the law, nor because the boundaries are yet to be determined by survey.

By *section* 329 *of the Code*, substantially the same doctrine is declared as the law of this State.

As a necessary consequence of this doctrine the legal title to the premises had vested in Summers when his bargaining with plaintiff, Lee, commenced.

Had this been a suit for the specific performance of a contract, and had the appellant proved that he was in a condition to transfer to the defendant an undivided half of the Simons' claim according to the terms of the written agreement, and that he did so transfer it, the case would involve a consideration of the rights and disabilities of tenants in common claiming and attempting to acquire and hold land under the donation law.

But that is not the case made by the pleadings, and the appellants in their argument disclaim any such object. They seem to rely on showing, under *section* 501 *of the Code*, that the patent was wrongfully issued to the defendants.

That section expresses in a condensed manner what has always been the rule and practice of the United States courts in equity cases concerning public grants of land.

It has always been the practice when a patent has been "wrongfully issued to another" that the party claiming adversely as purchaser or "donee of the United States" may maintain a suit to have the patent canceled. And that when the party entitled shall have established his claim he will be deemed to have the legal title. And by the doctrine of relation, it will take its beginning from the date of his settle-

ment, or from the first of those steps necessarily taken by him in perfecting his title. (*Lessieur* v. *Price*, 12 *How.*, 76; *Patterson* v. *Winn*, 11 *Wheat.*, 380; *Polk* v. *Wendall*, 9 *Cranch*, 87; *Bagnull* v. *Broderick*, 13 *Pet.*, 436; *Starr* v. *Stark*, *S. C. U. S.*, 1868.

But this right to set aside a patent cannot be exercised by a stranger to the title.

Although the donee may have disqualified himself from taking the grant, one having no right to claim the land as a grant from the government will not be allowed to set up the disability. (*Curle* v. *Burrell*, 2 *Sneed*, 62.)

Under the rulings above cited, and under *section* 501 *of the Code*, the right to resist a patent rests only with the government, and those who are in an attitude lawfully to claim under the government.

This subject is ably reviewed by Judge Field in the case of *Moore* v. *Wilkinson*, 13 *Cal.*, 487, where it is held that a patent cannot be set aside except in favor of "those whose title was at the time such as to enable them to resist successfully any action of the government respecting it."

If all doubts were removed as to the plaintiff, Philester Lee, having complied on his part with the written agreement, and if he was an actual purchaser of an undivided half of the Summer's claim, that fact and the possession shown in this case, if under that agreement, would not place him in an attitude to sue under *section* 501 *of the Code*, as a person claiming a specific parcel of "real property as a donee of the United States." For if he went into possession under that agreement, he went into possession as a tenant in common with another, thereby admitting himself not in a position to claim as a donee, and consequently not in a condition to attack the patent issued to Summers.

The contract alleged in the pleadings is not supported by the proofs, and this failure cannot be deemed a cause of variance under sections 94, 95, and 96 of the Code. The weight

of evidence is against the conclusion that the plaintiff on his part complied with the contract established by the proof.

The case does not show the plaintiff to be so connected with the title as to be able to attack the patent.

On each of these grounds the decree of the Circuit Court should be affirmed.