Argued December 16, 1909, decided January 11. Rehearing denied
. February 15, 1910.

## TEMPLE *v.* OSBURN.

[106 Pac. 16.]

JUDGMENT—CONCLUSIVENESS—PERSONS AFFECTED.

1. The owner of land under an unrecorded deed is not bound by a judgment in a subsequent action, to which she is not a party, against her grantor for the recovery of such land.

QUIETING TITLE—DEFENSES—VALIDITY OF PLAINTIFF'S TITLE.

2. In an action to set aside a judgment against plaintiff's grantor, and conveyances based thereon, as a cloud on title, to which judgment plaintiff was not a party, fraud by plaintiff's grantor in procuring her patent from the government is no defense.

PUBLIC LANDS—DISPOSAL OF LANDS OF UNITED STATES—REMEDIES FOR FRAUD.

3. In order to charge a patentee, or those claiming under it, with fraud in procuring the same, and thereby obtain its annulment, or to have the holder of the legal title so obtained declared as holding the title in trust for another, sufficient facts must be shown as will disclose that, under the law properly administered by the land department, the title should have been awarded to the person making such charge.

VENDOR AND PURCHASER—BONA FIDE PURCHASERS—CONSIDERATION—PRE-EXISTING DEBT.

4. A conveyance taken in payment of a former indebtedness does not give to the grantee the legal status of a *bona fide* purchaser for valuable consideration, so as to give the grantee preference over a prior unrecorded deed.

VENDOR AND PURCHASER — BONA FIDE PURCHASERS — JUDGMENT OR DECREE—NECESSITY FOR REGISTRATION.

5. Under Section 5373, B. & C. Comp., requiring a decree affecting land to be recorded as a condition to its having the effect of a deed, a person asserting title under an unrecorded decree affecting land is in the same position as one holding under an unrecorded deed, and cannot successfully dispute the title of another holding under a prior unrecorded deed.

From Lake: LAWRENCE T. HARRIS, Judge.

This is a suit brought by Minnie B. Temple against F. W. Osburn, Trustee; S. W. Brown, The Eugene Loan & Savings Bank, J. J. Walton and Emma Walton, his wife, S. P. Ness and Mary S. Ness, his wife, E. O. Potter and Emily B. Potter, his wife, and A. C. Woodcock, for the purpose of quieting title to certain lands in Lane County, Oregon. From a decree in favor of defendants, plaintiff appeals. REVERSED.

For appellant there was a brief with oral arguments by *Mr. John K. Kollock* and *Mr. M. A. Zollinger.*

For respondents there was a brief over the names of *Messrs. Woodcock & Potter* and *Messrs. Walton & Ness,* with oral arguments by *Mr. Sjur P. Ness* and *Mr. Absalom C. Woodcock.*

MR. JUSTICE KING delivered the opinion of the court.

This is a suit to remove a cloud from the title to lots 4, 5, 12, and 13, section 12, township 16 S. range 8 W., W. M., containing 163 acres, in Lane County, Oregon, and comes here on appeal from a decree in defendant's favor.

The facts, as we gather them from the record, are these: Texana Brown, while the wife of S. W. Brown, filed and made final proof upon the lands above described, under what is known as the timber and stone act. Some controversy appears, concerning where the funds, paid the government for the land, were procured, but, under the views hereinafter expressed, this feature becomes immaterial. On May 6, 1904, divorce proceedings were instituted by S. W. Brown against his wife, Texana Brown, and on June 23d, following, a decree was entered in his favor. No mention of property rights was made in either the complaint or decree. On October 3, 1904, a patent to the land was issued to Mrs. Brown, placed of record January 19, 1905, and, on October 7, 1905, for a valuable consideration, she conveyed the land, by a warranty deed, to plaintiff, Minnie B. Temple, but such deed was not recorded until September 22, 1906. On May 22, 1906, in the circuit court of Lane County, Brown instituted suit against Texana Brown, his divorced wife, and, after alleging the facts relative to their marriage and divorce, averred that during their coverture she was the custodian of funds realized from the farm upon which they resided, but owned by him, and that, without his knowledge, by the wrongful and unlawful use of

such trust funds, she procured title to the lands in question; and after the allegations usual in such cases, but without averring any intent on his part to enter the lands, prayed that she be decreed as holding the title to the property in trust for and required to convey to him the title thereto. The defendant therein failed to appear, and, after default taken, a decree was entered, directing that within 30 days she convey the title to the lands to Brown, upon failure of which the decree would stand in lieu of such conveyance. This decree was entered upon the journals of the court in the usual form, but not otherwise placed of record. At the time of bringing this suit, Brown caused the records in the clerk's office, of the county in which the property is situated, to be searched, to ascertain the status of the title, finding only the patent to Texana Brown of record. Without knowledge as to the execution of any other deed or transfer of the property, Brown, on June 22, 1906, conveyed to J. J. Walton, S. P. Ness, E. O. Potter, and A. C. Woodcock, his co-defendants herein, an undivided one-half interest in and to the property. On November 13 and December 8, 1906, mortgages aggregating $800 were executed by Brown and his co-owners to defendant, the Eugene Loan & Savings Bank, and later a trust deed was executed by them to defendant, F. W. Osburn. The plaintiff, on September 22, 1906, placed her deed of record, defendants questioning its sufficiency to convey to her the title to the premises; hence this suit. We are therefore confronted with the inquiry as to who has the better title.

1. While Texana Brown is precluded from questioning the effect of the decree entered in favor of S. W. Brown, such decree does not bind this plaintiff, who, although Mrs. Brown's grantee, was not a party thereto. See *Walker* v. *Goldsmith,* 14 Or. 125 (12 Pac. 537); *Webster* v. *Pierce,* 108 Wis. 407 (83 N. W. 938); *Irvin* v. *Smith,* 17 Ohio, 226.

2. The first defense interposed is to the effect that
A. O. Temple, and not the plaintiff, is the real party
in interest, in support of which it is maintained that the
entry was not made in good faith, or for the patentee's
own use or benefit, but for the benefit of A. O. Temple,
who, it is claimed, supplied the funds by which the title
was procured from the Government. Whether the evi-
dence offered is adequate to support this theory is not
necessary for us to inquire, for the plaintiff holds the
legal title, acquired through her grantor under the patent,
and whether this title was originally secured through
fraud is a matter which, under the issues presented, can-
not concern the defendants.

3. In order, either to charge a patentee, under a patent
from the United States, or those claiming under it, with
fraud in the procurement of such patent, and thereby
to procure its annulment, or to have the holder of the
legal title so procured, declared as holding the title in
trust for another, sufficient facts must be averred as
will disclose that under the law, properly administered
by the land department, the title should have been
awarded the person making such charge. It is not suffici-
ent to show there was error in adjudging the title to the
patentee, whether such error was fraudulent or other-
wise. In other words, the claimant against the patentee
must so far bring himself within the law as to entitle
him, if not obstructed or prevented, to complete his claim.
*Lee* v. *Summers,* 2 Or. 260, 268; *Morrow* v. *Warner Val-
ley Stock Co.,* 56 Or. —— (101 Pac. 171, 184) ; *Bohall*
v. *Dilla,* 114 U. S. 47 (5 Sup. Ct. 782: 29 L. Ed. 61) ;
*Ard* v. *Brandon,* 156 U. S. 537 (15 Sup. Ct. 406: 39 L.
Ed. 524) ; *D. & I. R. R. R. Co.* v. *Roy,* 173 U. S. 587 (19
Sup. Ct. 549: 43 L. Ed. 820). Not only are no issues
here presented to that effect, but, so far as disclosed in
the suit, wherein the decree relied upon was procured,
Brown averred no facts, nor did he attempt any asser-

tion tending in any manner to disclose that, in the absence of the alleged wrongful procurement of the patent from the Government, he was in position to have obtained title to the premises. When plaintiff offered in evidence the patent and deed received from the patentee, she *prima facie* established her title, to overcome which the onus was shifted to Brown and his co-defendants. This they have attempted, relying upon the decree in the suit between Brown and the patentee, by which plaintiff, as heretofore stated, is not affected. As disclosed by the authorities cited, insufficient averments were made relative to proceedings before the land department to authorize a decree in Brown's favor, and the decree appears to have been granted solely because of what amounts merely to a pre-existing debt, due him from the patentee, which was occasioned by plaintiff using his funds in acquiring the title. Owing to the plaintiff not having been a party thereto, Brown and his grantees are held to the same degree of proof here as Brown would have been in the suit between him and Texana Brown, had she answered or otherwise legally resisted his complaint.

4. Then, viewing defendants' rights in the most favorable light possible, the decree, through which they assert title (attributing to it the effect of a deed from Texana Brown to S. W. Brown, and it could not possibly have any greater effect—*Price* v. *Sisson*, 13 N. J. Eq. 168—; is based solely upon a pre-existing debt, or upon the claim that the money used in the purchase of the land was the property of Brown. It would follow, therefore, that they cannot avail themselves of the benefit of the decree, as against the previously executed deed to plaintiff; for a conveyance, taken in payment of a former indebtedness, does not give to the grantees the legal status of *bona fide* purchasers for valuable consideration, so as to give them preference over a prior unrecorded deed. *Pancoast* v. *Duval*, 26 N. J. Eq. 445, 448; *Dickerson* v.

*Tillinghast,* 4 Paige, 215 (25 Am. Dec. 528) ; *Mingus* v. *Condit,* 23 N. J. Eq. 313; *Cary* v. *White,* 52 N. Y. 139; *Wells* v. *Morrow,* 38 Ala. 125.

5. Again, Section 5373, B. & C. Comp., requires, as a condition precedent to a decree having the effect of a deed, that it first be recorded in the record of deeds in the county in which the land is situated. This was not done in the case at bar. True, the decree becomes effective without having been recorded, but, unless such requirement is complied with, those asserting title thereunder are in no better position than if holding through an unrecorded deed, and when not recorded the first conveyance executed will prevail. Section 5359, B. & C. Comp.; *Walker* v. *Goldsmith,* 14 Or. 125 (12 Pac. 537).

It follows that the decree of the circuit court must be reversed, and one entered here in harmony with these views, and it is so ordered.                    REVERSED.