237

Argued and submitted July 26; resubmitted In Banc October 6,
reversed and remanded November 10, 1982,
reconsideration denied January 14,
petition for review allowed February 23, 1983 (294 Or 536)
See 295 Or 778, 671 P2d 103 (1983)

PARTLOW, formerly Rembert,
*Appellant,*
*v.*
CLARK et ux,
*Respondents.*

(No. 16-81-06494, CA A23332)

653 P2d 568

Claud A. Ingram, Salem, argued the cause and filed the brief for appellant.

K. Patrick Neil, Eugene, argued the cause for respondents. With him on the brief were Paul V. Vaughan, and Hershner, Hunter, Miller Moulton & Andrews, Eugene.

BUTTLER, J.

Reversed and remanded.

### BUTTLER, J.

Plaintiff brought this action for partition of real property and for damages to the property. As an affirmative defense, defendants alleged that they had purchased the property for value from its record owner and had no notice of plaintiff's interest. The trial court granted defendants' motion for summary judgment based on that defense, and plaintiff appeals from the ensuing judgment for defendants. We reverse and remand.

The material facts are not disputed. Plaintiff's marriage was dissolved by a Lane County circuit court decree entered on May 22, 1975. The dissolution decree awarded certain real property located in that county, of which her former husband was the record owner, to plaintiff and her former husband as tenants in common; it required the parties to execute all documents necessary to transfer title to the properties within 60 days, in default of which the decree stood as the equivalent thereof. The decree further provided that the property was to be sold and the net proceeds divided equally between them. The decree was docketed on May 22, 1975, but was not recorded in the deed records. The former husband did not execute the deed as required by the decree; after 60 days had transpired, title to an undivided one-half interest in the property passed to plaintiff by operation of law. Notwithstanding that fact, the deed records showed plaintiff's former husband as the record title holder, and in April, 1976, he sold the property to persons who later sold it to defendants, on August 8, 1978, who recorded their deed two days later.

Defendants contend that any interest in the property plaintiff acquired through the decree is void as to them, because the decree was not recorded and because defendants did not have actual knowledge of plaintiff's interest at the time they purchased the property and recorded their deed. In support of that contention, they rely on ORS 93.640(1), 93.680(1) and *Temple v. Osburn,* 55 Or 506, 106 P 16 (1910). ORS 93.640(1) provides in relevant part:

> "Every conveyance, deed, land sale contract or other agreement or memorandum thereof affecting the title of real property within this state which is not recorded as

provided by law is void as against any subsequent purchaser in good faith and for a valuable consideration of the same real property, or any portion thereof, whose conveyance, deed, land sale contract or other agreement or memorandum thereof is first filed for record * * *."

ORS 93.680(1)(b) provides:

"(1)   The following are entitled to be recorded in the record of deeds of the county in which the lands lie, in like manner and with like effect as conveyances of land duly acknowledged, proved or certified:

"* * * * *

"(b)   Judgments of courts in this state requiring the execution of a conveyance of real estate within this state."

It is clear enough that under ORS 93.680(1)(b) the decree *could* have been recorded in the deed records. The question is whether the transfer of title which took place under the self-executing decree was, by virtue of ORS 93.640(1), void as to defendants because it was not recorded in the deed records.

The situation is analogous to that presented in *United Finance Company v. King,* 285 Or 173, 590 P2d 228 (1979), where a dissolution decree entered in Multnomah County required the defendant to convey real property in Clackamas County to his former wife. That decree was not "filed" in Clackamas County until long after a judgment was entered in that county against defendant, who was the record owner of the Clackamas County real property. The issue was whether the judgment was a lien against that property under ORS 18.350(1),[1] given the provisions of ORS 18.370:

"A conveyance of real property, or any portion thereof, or interest therein, shall be void as against the lien of a judgment, unless such conveyance be recorded at the time of docketing such judgment, or the transcript thereof, as the case may be."

---

[1] ORS 18.350(1) provides:

"(1) From the time of docketing an original or renewed judgment or the transcript thereof, as provided in ORS 18.320, such judgment shall be a lien upon all the real property of the defendant within the county or counties where the same is docketed, or which he may afterwards acquire therein, during the time prescribed in ORS 18.360."

The court held that the judgment was not a lien on that property, because defendant's wife had become the owner of the property by virtue of the earlier decree, although the decree was not filed, docketed or recorded in any public record in Clackamas County.

The functions of ORS 18.370 and ORS 93.640(1) appear to be identical — to give constructive notice to subsequent third parties of the transferee's interest in the property. In *United Finance,* the court reasoned that the property did not change ownership by virtue of a conveyance but, rather, by a decree. Therefore, ORS 18.370, by its terms, was not applicable.[2] In so reasoning, the court avoided the necessity of explaining the statement it had made two years earlier in *Wilson v. Willamette Industries,* 280 Or 45, 569 P2d 609 (1977), that ORS 18.370 and 18.350 were conflicting and that ORS 18.350 controlled, because it was intended to limit the lien to the property of the defendant only, and not to give a lien on some other person's property. 280 Or at 48.

Although that conclusion seems apparent enough, the same reasoning applied here leads to the conclusion that plaintiff's former husband could not convey to another real property that had been transferred previously to her by the decree. That reasoning begs the question: was the earlier transfer void as to judgment creditors, ORS 18.370, or as to bona fide purchasers, ORS 93.640(1), because there was nothing of record to give notice to third parties of the transferee's interest? In *Wilson,* there was a conveyance (a deed), which was not recorded, and the court, relying on *Thompson et al. v. Hendricks et al.,* 118 Or 39, 245 P 724 (1926), held that the plaintiff, a judgment creditor, had no lien on the property, because defendant no longer owned it. In *Thompson,* however, the grantees under the unrecorded conveyance were in "open and notorious" possession of the property at the time the judgment against their grantor was docketed, and the court acknowledged that their possession was constructive notice to third parties of their interest. It appears that that should have ended the matter; however,

---

[2] The court pointed out that the respondent had not appeared and that no one had contended that the recording statutes, ORS 93.610-.800, might be relevant. Those statutes were not considered. 285 Or at 176 n 1.

the court said that the lien statute (the forerunner of ORS 18.350) did not give plaintiffs a lien, because defendants' grantor no longer owned the property at the time the judgment was entered.

The question arose again in *Chaffin v. Solomon,* 255 Or 141, 465 P2d 217 (1970), where the judgment was entered prior to the recording of an earlier transfer of title to the plaintiff, who filed a suit to quiet title after the property was sold on execution to the defendant. In that case, the court properly treated ORS 18.370 (voiding an unrecorded conveyance as to a subsequent judgment lien) as a "notice" statute, giving a judgment lien creditor the same standing as a purchaser of property. The court said:

> "It has long been established in Oregon that since the purpose of the legislature was to give a judgment lien creditor the same standing as the purchaser of property, it follows that when a creditor who resorts to such proceedings is informed of an outstanding equity, or of facts sufficient to put him on inquiry by which he could ascertain the existence of such an equity, the lien he secures by the docketing of his judgment will be subject to it. *Riddle v. Miller,* 19 Or 468, 469-70, 23 P 807 (1890); *Rayburn v. Davisson,* 22 Or 242, 245, 29 P 738 (1892); *Matsuda v. Noble et al,* 184 Or 686, 703, 200 P2d 962 (1948). *See also Thompson v. Hendricks, supra,* at 41-3." 255 Or at 148.

It was argued in *Chaffin* that *Thompson* should be overruled.[3] However, because the plaintiff in *Chaffin* had been in open possession of the property prior to the entry of the judgment, the court held that the judgment creditor had constructive notice of plaintiff's interest and could not rely on the statute (ORS 18.370), which *Thompson* stated did not mean what it said. Accordingly, the court found it unnecessary to reconsider *Thompson.* Justice O'Connell, specially concurring, would have overruled *Thompson.*

If, as the court clearly recognized in *Chaffin,* a judgment creditor has the same status as a purchaser, and if ORS 18.370 is a notice statute, it is difficult to explain *Wilson* and *United Finance.* One might reasonably conclude after *Wilson* that that statute no longer has any

---

[3] *Thompson* had been criticized in Note and Comment, 31 Or L Rev 330, 341-46 (1952).

significance; it appeared to be no longer viable. However, in *United Finance* the court treated the statute as alive and well, but it was able to avoid dealing with the "apparent conflict" between ORS 18.370 and 18.350 by refusing to extend "conveyance" (ORS 18.370) to include a decree transferring title by operation of law. Given that holding, the statute was not applicable; but we still are not told where constructive notice comes into the picture. Clearly, there was none in *United Finance,* because the property was not located in the county where the decree was entered.

Because we view the problem in the cases discussed above and that presented here, and the statutes dealing with both, as closely analogous in that both relate to constructive notice, we are not sure where the cases lead us. It might be that we should conclude that judgment creditors do not deserve the same protection as that provided to *bona fide* purchasers for value *(see Wilson v. Willamette Industries, supra,* and *Thompson et al. v. Hendricks et al., supra),* but *Chaffin v. Solomon, supra,* belies that conclusion and does not seem to explain *United Finance Company v. King, supra.* Neither does it explain the concept or relevance of constructive notice, the issue here.

We may conclude reasonably that a transfer of title by decree is not included within the term "conveyance" as used in ORS 93.640(1); neither is it included within the terms "deed, land sale contract or other agreement or memorandum thereof," as used in that statute. All of those instruments, unlike a decree, do not become a matter of record, and are not entitled to be recorded, unless they are duly acknowledged and placed of record by a private party.

Even so, defendants contend that, by virtue of ORS 93.680(1)(b), the decree was required to be recorded in the deed records, in default of which the transfer was void as to them. Although that section is, on its face, permissive, defendants contend that *Temple v. Osburn, supra,* holds that the statute is mandatory. There, the court said:

"* * * Section 5373, B. & C. Comp. [the predecessor of ORS 93.680(1)], requires, as a condition precedent to a decree having the effect of a deed, that it first be recorded in the record of deeds in the county in which the land is

situated. This was not done in the case at bar. True, the decree becomes effective without having been recorded, but, unless such requirement is complied with, those asserting title thereunder are in no better position than if holding through an unrecorded deed, and when not recorded the first conveyance executed will prevail. * * *" 55 Or at 511.

Aside from the fact that the quoted language was dicta,[4] the court in *United Finance* squarely held that a decree requiring the conveyance of real property effectively transferred title to the property and that it was not necessary to record the decree to defeat the claim of a third party, even when the real property was in a county other than that in which the decree was entered. That holding appears to be in direct conflict with the dicta in *Temple*.

We conclude, therefore, that there is no statutory requirement that plaintiff record the decree in the deed records under ORS 93.680(1)(b) and that the failure to so record the decree does not make the transfer of title to plaintiff void as to defendants under ORS 93.640(1). Nonetheless, there must have been something to have given constructive notice to defendants, or they take free of plaintiff's interest. Plaintiff contends that the docketed decree provided constructive notice to third parties. There is no question that if the judgment had been for money only it would have been a lien on the property in question

---

[4] It is difficult to know what *Temple* stands for. Plaintiff claimed title under a deed, which she did not record for several years. Defendant claimed title through one who claimed title under a court decree entered prior to plaintiff's recording of her deed. The opinion first holds that the defendant's predecessor in interest had never acquired title to the property, because his pleadings in the prior lawsuit were fatally defective; therefore, defendant never acquired anything. If that conclusion was correct, that would seem to have ended the case. However, the court went on to say that, even if the prior decree under which defendant's predecessor claimed title had the effect of a decree to him, it was based solely upon a preexisting debt and, therefore, he did not have the status of a bona fide purchaser for value. The court went on to use the language quoted in the body of this opinion, presumably to say that because defendant's predecessor was not a bona fide purchaser, whatever interest he acquired by the decree could not come ahead of the plaintiff's prior unrecorded deed, because the decree had not been recorded in the deed records.

What is particularly puzzling about the case is that, although the plaintiff did not record her deed for some time after obtaining it, she *did* record the deed *prior to the defendant's* having acquired *any interest* in the property. Although the court does not go into that fact, it would seem to make the conclusion of the court correct.

from the time it was docketed. ORS 18.350. In other words, the lien of the judgment would have been constructive notice to all parties dealing with the property, and the defendants here would have taken the property subject to that judgment lien. Stated differently, the judgment docket is a public record which gives constructive notice to the world.

We do not see how it can make any difference in this case that, instead of there having been a money judgment, there was a judgment requiring plaintiff's former husband to convey an undivided one-half interest in the described real property to her. Defendants contend that the decree here was not entitled to be entered in the judgment docket. ORS 7.040(1) provides:

> "(1) The judgment docket is a record wherein judgments and decrees are docketed, as provided by statute. The judgment docket shall contain the following information: Judgment debtor; judgment creditor; amount of judgment; date of entry in journal; when docketed; date of appeal; decision on appeal; satisfaction, when entered; other such information as may be deemed necessary."

We think defendants' contention that although a decree may be docketed, "to operate as a general lien, it must establish a personal liability for a definite sum enforceable by execution" misses the point. Plaintiff does not claim a judgment lien for any dollar amount; she claims an interest in the property under a self-executing decree. Apparently, defendants contend that that kind of a decree is not entitled to be docketed under the statute. They read the statute too narrowly. The last phrase of the statute requires that the docket contain "other such information as may be deemed necessary," which clearly contemplates that a decree that requires more than the payment of money may be docketed.

Furthermore, at the time of the decree involved here,[5] former ORS 18.030, which applied to both judgments and decrees, former ORS 18.020, provided in part:

> "All judgments shall be entered by the clerk in the journal, and shall specify clearly the amount to be

---

[5] Former ORS 18.030 was repealed by Or Laws 1981, ch 898, § 53; former ORS 18.020 was repealed by Or Laws 1979, ch 284, § 199, and former ORS 18.310 was repealed by Or Laws 1979, ch 284, § 199.

recovered, the relief granted, or other determination of the action. * * *"

ORS 18.320 requires the clerk to docket the judgment or decree (former ORS 18.310) immediately after entering it in the journal.

Given the conclusions we have reached in what we concede to be an uncertain state of the law with respect to constructive notice, we hold that the decree here, if properly docketed,[6] was constructive notice to defendants, who took the property subject to plaintiff's interest therein. Accordingly, the trial court erred in granting defendants' motion for summary judgment.

Reversed and remanded.

**RICHARDSON, J.,** dissenting.

The question in this case is whether plaintiff's interest in real property under a decree which required that the property be conveyed to her and which was not recorded in the deed records pursuant to ORS 93.680(1)(b) is void as to the subsequent bona fide purchasers of the property. The answer to the question was provided by the Supreme Court in *Temple v. Osburn,* 55 Or 506, 511, 106 P 16 (1910), through the language the majority quotes at 60 Or App 243-44.[1]

The majority begins its analysis with the observation that "[t]he situation is analogous to that presented in *United Finance Company v. King,* 285 Or 173, 590 P2d 228 (1979)." 60 Or App at 240. The majority then presents a lucid and critical discussion of *United Finance* and earlier Supreme Court decisions construing ORS 18.350 and 18.370. After repeating that the problems and statutes in

---

[6] Plaintiff's affidavit in opposition to defendants' motion for summary judgment states that the decree was docketed on the date it was entered. Defendants did not contest that fact below. On appeal, defendants state that there is nothing in the record to show that the decree was docketed, but they assume, as they must for purposes of the appeal, that it was docketed. That fact remains unresolved.

[1] The majority characterizes the language as "dicta." If, by that, the majority meant that the language *never* was authoritative, I would disagree. Whether or not the Supreme Court *had* to interpret the predecessor of ORS 93.680(1) in *Temple,* it *did* interpret the statute and the interpretation was part of the rationale for its holding. Be that as it may, I understand the majority's position to be that the *Temple* language has been overruled *sub silentio* by the Supreme Court, and not that the language was nonprecedential from the outset.

those cases and this case are "closely analogous," 60 Or App at 243-44, the majority proceeds to equate analogy with identity and superimposes the interpretation of ORS 18.350 and 18.370 in *United Finance* on ORS 93.640(1) and 93.680(1)(b). Only then do we learn from the majority that, in *Temple,* the Supreme Court interpreted the materially identical predecessor of ORS 93.680(1)(b) to mean the exact opposite of what the majority says that statute must mean in light of the Supreme Court's intepretation of a different statute in *United Finance.*

I agree with the majority that the situations and the statutes in *United Finance,* on the one hand, and in *Temple* and this case, on the other, are analogous. But I think the majority carries the analogy too far: *Temple* is directly in point; *United Finance* is not; and the majority's understanding that *United Finance* overrules *Temple sub silentio* is belied by the footnote in *United Finance* (to which the majority refers at 60 Or App 241, n 2:

> "The creditors involved have made no response to appellant's brief, and *no reference was made in this court to any possible relevance of the recording statutes, ORS 93.610-93.800* or the statutes concerning conveyances in fraud of creditors, ORS 95.020, ORS 95.070." 285 Or at 176, n 1. (Emphasis added.)

The majority identifies a number of significant problems, including the tortured path the Supreme Court has followed in its interpretations of ORS 18.350 and 18.370; the disparity under the applicable statutes, as now interpreted by the Supreme Court, between the rights of judgment creditors and those of bona fide purchasers against holders of unrecorded real property interests obtained through judicial orders; and the apparent disparity between the treatment of judgment liens and judicially-ordered conveyances for purposes of constructive notice. The majority's solution may make sense; the Supreme Court's decision in *Temple,* as well as its decisions in some or all of the other cases the majority discusses, may not make sense.

If the issue here were whether *United Finance* and the earlier cases construing ORS 18.350 and 18.370 are at odds with one another and, perhaps, the statutes they

construe, I might agree with the majority. I might also agree if the issue were whether *United Finance* and *Temple* treat judgment creditors and bona fide purchasers anomalously. Finally, I would agree with the majority if the issue were whether to suggest that the Supreme Court reexamine *Temple* in light of *United Finance* (and *United Finance* in light of *Temple).*

However, at least for purposes of *deciding* this case, none of those things is the issue. The issue is whether to follow *Temple* or to overrule it. Only one of those options is available to this court. The majority's invitation to the Supreme Court to reevaluate existing precedent is amply supported by the majority's cogent analysis of the problems and inconsistencies to which the precedent gives rise. The invitation does not need to be emphasized by our disregarding Supreme Court precedent which is clearly controlling.

I would affirm the judgment and I respectfully dissent.

Joseph, C. J., joins in this dissent.